## No. 10,977.

### SUCCESSION OF MRS. M. SPARROW.

#### ON APPLICATION TO HOMOLOGATE FINAL ACCOUNT, AND OPPOSITION THERETO.

1. In case a right has been reserved to a succession representative, to claim reimbursement for sums by him *already* advanced to minor heirs having an interest in the property under administration; such representative, making further advances to said minors, in order to supply them with necessaries for their support and education, which the tutor did not possess adequate means to supply them with, occupies toward such minors *quasi* contract relations entitling him to reimbursement of such sums *since* furnished also.

2. Settlement thereof is clearly contemplated to take place in due course of the administration of the ancestor's estate, from which the advances were made. To such case Art. 350 of the Revised Civil Code does not apply.

3. A final succession settlement having been postponed for a number of years, on account of numerous complications and unavoidable causes, for which the administrator is not responsible, and in the meantime the mules and working cattle attached to the succession plantations having been annually leased therewith, the loss sustained by the death of any of said animals is rather to be attributed to natural causes, such as work, over-age and ordinary use will bring about, than to dereliction of duty on the part of the administrator in failing to obtain a decree for their sale, or to damage resulting from his *misconduct*.

4. Charges against a succession, of whatever character they may be, such as funeral charges, law charges, lawyer's fees for settling the succession, and, generally, all claims against the succession, originating after the death of the person whose succession is under administration, are to be paid before the debts contracted by the deceased.

5. Among such succession charges may be included claims of the administrator against minors for moneys to their tutor advanced for their support and education, and before the shares of said minors have been segregated from the mass of the succession and reduced to dominion and control by their tutor.

A PPEAL from the Eighth District Court, Parish of East Carroll, Montgomery, J.

---

*Jos. E. Ransdell* for Administrator, Appellant:

1. If a succession owes no debts and the heirs are present, there is no law requiring the administrator to sell the succession property.
2. The administrator can not sell the work stock and farming implements of cultivated lands belonging to a succession separate and apart from the lands. Suc. of Myrick, 38 An. 611; Suc. Sparrow, 39 An. 703; C. C. 468; C. P. 660.

---

*F. P. Poche, contra,* cited: C. C., Art. 350; 39 An. 706; 42 An. 506; C. C., Arts. 1051, 1163; 2 An. 538; 38 An. 611; 38 An. 303; 39 An. 696; 40 An. 484; 42 An. 500; 40 An. 494; 25 An. 221; 32 An. 321; 33 An. 1107; 35 An. 675.

---

The opinion of the court was delivered by

WATKINS, J. This record presents the fourth appeal to this court in this succession.

In obedience to a previous decree of this court, in April, 1890, as reported in 42 An. 500, the administrator prepared and caused to be filed a final account of his gestion of the succession of Mrs. Minerva Sparrow, and attempted to sell a sufficiency of succession property to pay its established debts, and a sufficiency of the property of the respective interests of the heirs to pay their respective indebtednesses to the administrator.

The account was opposed, and the sale was enjoined by all of the heirs on sundry grounds, the principal one being that the administrator had neglected to make sale of the perishable property of the estate, and had allowed it to deteriorate and perish while in his hands under administration, and for the value of which property he became responsible.

The opposition, on the part of the two minors, representing one-third of the estate, makes the additional point that, by a decree of this court made in this succession, they had been put in possession of their inheritance, and that no claim could be enforced against it as succession property, nor otherwise than by proceedings had contradictorily with their tutor; and that no claim against them for moneys advanced to their tutor for their account can be engrafted on proceedings had in their grandmother's *mortuaria.*    40 An. 497.

The opposition to the account and the injunction were consolidat-

ed and tried together, resulting in a judgment which homologated the account, including the sum of $3287.50, claimed from the minors for moneys advanced to their tutor for their account; perpetuating the injunction against the probate sale; and holding the administrator liable to the minors for one-third of the value of personal property lost, or destroyed during the accountant's administration, extending from the 20th of July, 1883, to the 25th of June, 1887, and fixing their interest in said valuation at $2419.37.

From that judgment all parties appealed, but in this court a statement was made to the effect that the major heirs had discontinued their claim, thus leaving the controversy to be decided between the administrator and the minors.

Counsel for the minors submits the following propositions, viz.:

"Under its present status the case presents for discussion and decision three points, which are as follows:

"1. Can the administrator of the succession of Mrs. Minerva Sparrow obtain a judgment, through a final account of administration, against the minor heirs, Mary and Kate Decker, for moneys advanced by him to their tutor, for their account?

"2. Can the administrator be held legally liable for the loss of mules and other property of a perishable character, for having failed to sell the same immediately after his appointment?

"3. Can an administrator be allowed to sell succession property to pay debts, when the debts are shown to be claims which he propounds against the heirs individually, some being minors in possession of their share of the succession property under judicial authority?"

I.

The first item of opposition that presents itself is the debit of $3287.50, entered on the tableau of debts which accompanies the account against the minors, Mary and Kate Decker.

That sum is the aggregate of two separate and distinct items of indebtedness which are thereon separately stated thus, viz.:

*Item one.* "Balance due by minors, Kate and Mary Decker, as per judgment above mentioned, which decreed them to owe the administrator $4018.84, and ordered him to pro rate as above mentioned, thus making his collection from them $2531.34, and leaving a balance due by them of $1487.50."

*Item two.* "Amounts advanced to C. S. Wyley, tutor for minors,

Mary and Kate Decker, since filing the fourth provisional account as per exhibit A and vouchers attached, numbered from 1 to 20 inclusive, $1800."

The *former* is explained by referring to the first preceding item on the tableau, which specifically refers to the "judgment on fourth provisional account, which decreed, etc.," and which evidently is "the judgment above mentioned," as therein referred to. This explanation is further supplemented at the foot of the tableau, thus:

"The items of $1660.87 due by Mrs. Foster, of $679.03 due by Mrs. Ashbridge, and of $1487.50 due by the minors, Mary and Kate Decker, were approved on the fourth provisional account, and are placed hereon for the *sole* purpose of showing the exact amount due by said persons after making the *pro rata* distribution ordered by the judgment on said account."

Reference to the report of our decision in this succession, to be found in the 42d of Annuals, at pp. 500, *et seq.*, will show that we dealt with and disposed of the administrator's *fourth provisional account*, and three tableaux of debts, the *second* of which was made up "of debts due by the heirs to the administrator of the succession," and which was opposed by the tutor of the minors, Mary and Kate Decker, on various grounds.

That opinion further shows that upon that second tableau there appeared but three items, one of which was the "amount advanced to the minors Decker, $4018.84," which is the identical sum and the exact amount that is described and dealt with on the tableau under present consideration. 42 An. 505.

Our opinion thus states the controversy, to wit: "Neither of the major heirs opposed the amount charged to *them* respectively, and hence the only question is, with regard to the charges against the two minors, Mary and Kate Decker.

"The tutor insists that it is not competent for the settlement to be made *in the succession* of their grandmother, on an administrator's account, but that it should be referred to him as tutor for allowance or rejection, and settlement thereof, *in the tutorship*. He further contends that, as no debts can be made against minors in excess of their revenues without the authority of a family meeting (R. C. C. 350), there is no legal reason for the enforcement of the administrator's demand against them."

But we made reference to what had been said in our former opinion

(39 An. 706) on the subject, to the effect that the administrator's advances to the minors "were manifestly prompted by laudable feelings and considerations of fairness and humanity, for which (he) should not be made to suffer, if by any legal means he can obtain reimbursement," and that "we therefore deem it our duty to *reserve the right of the administrator to demand the reimbursement of all sums advanced by him to the two heirs aforesaid, as well as for similar advances made to the minors, Mary and Kate Decker*" (42 An. 505); and said:

"Hence it is clear that the *whole question* is remitted to *this succession settlement*, and that it is narrowed to the *amount* of money the administrator expended for their account.

"We can perceive no objection to this mode of proceeding, as the account and two of the tableaux concern the minors, and *their interests are still united with those of the major heirs in the succession.* And it is quite as much a matter of *justice* to the administrator that their liability to him for *advance payments made on their inheritance* should be adjusted *in the succession* as payments so made to the *major heirs*" (42 An. 506); and affirmed the judgment of the lower court homologating those tableaux.

This citation is sufficient to show that, in so far as the allowance of the *item supra*, of $1487.50, is concerned, it is fully covered by our judgment on last appeal, and that the present tableau can not be disturbed in that respect. It is, also, quite sufficient authority for the settlement and judicial determination *in the succession* of the amounts that the administrator has advanced to the tutor of the minors, "*since* filing of the fourth provisional account" of administration, and aggregating $1800. For to that theory this court stands committed in two opinions rendered in this succession, and it was, doubtless, on the faith of them that the administrator acted—as he undoubtedly had a legal right to do—in furnishing the minors the means of subsistence from the funds in his hands subject to their demands under the exceptional circumstances stated.

It is, therefore, quite sufficient to state that it is our deliberate conviction that the judgment of the court, homologating the tableau, was jurisdictionally well grounded in respect to the demands of the administrator against the minors.

In respect to the *amount* of the claim of the administrator against the minors, being in excess of their revenues, those two opinions—

39 An. 706 and 42 An. 567—appear to be quite as conclusive as they are on the previous question—because we said of the administrator's claim, that while " all of these proceedings were irregular, and were carried on outside of the law   *   *   (he) should not be made to suffer, if by any legal means he can obtain reimbursement.   *   *   We therefore deem it our duty to reserve the rights of   *   *   the present administrator to enforce their respective rights against the two heirs of age   *   *   by proper proceedings *in due course of administration,* and we also reserve the rights of the administrator to demand reimbursement of all sums advanced by him to the two heirs aforesaid, *as well as for similar advances made to the two minors, Mary and Kate Decker.*"   39 An. 706.

When further litigation, in connection with the reserve in our previous decree, brought this succession before us a second time (40 An. 496) there was question made with reference to the right of the two minors to be put in possession of their interests in the succession, and it was objected on the part of the administrator, that it was a condition precedent to their entering into possession that the amounts they owed him should be first paid, but this view did not obtain, the court declaring:

" Besides, *even if the law did not* provide adequate powers to enforce any claim the administrator might have against the minor heirs, it *is evident that the administrator already has in his hands funds that can be applied to the satisfaction of any demands against them.*"   40 An. 496.

Thus we say in *one* opinion, that the administrator's right to demand of the minors reimbursement of the sums paid is reserved "by proper proceedings *in due course of administration*" (39 An. 706); in another, that he "has in his hands funds that can be applied to the satisfaction of any demand against them," (40 An. 496) ; and in another, "that the whole question is remitted to *this* succession settlement" (42 An. 506).

And in the last case we examined and approved the claims of the administrator against the minors, and adjudged *"the shares or interests of the minors (to be) liable therefor."* It is quite true that we also employed the expression "there being no proof in the record to show that the sums expended exceeded their revenues" (42 An. 507) ; yet, on careful reflection, we are of the opinion that, under the circumstances of this case, the provisions of Art. 350 of the Re-

vised Civil Code are not controlling. That article is found in the particular section of the code which treats "of the administration of the tutor," and it provides a rule of action for the tutor. But in this case it is apparent that, while the succession of Mrs. Sparrow has been judicially terminated *quoad* the minors interests, yet there has been *no separation of their patrimony from the mass of the succession*, or from the interests of their co-heirs, and it is from the funds and property *thus bound up* that advances to the minors have been made, antecedent to the *commencement* of the tutor's *actual* administration of the minor's property. Inasmuch as settlement is clearly contemplated to take place "in due course of administration" of the estate of *Mrs. Minerva Sparrow*, it seems to be indisputable that such settlement must be made in pursuance of the law governing successions, and not the law governing tutorships.

Indeed, the code puts upon the act of one who furnishes a minor with the necessaries of life, the stamp of a contract by which the latter is bound, because it says, "When the minor has no tutor, or one who neglects to supply him with necessaries for his support or education, a contract or *quasi* contract for providing him with what is necessary for those purposes is valid." R. C. C. 1785. The act of the administrator was in strict keeping with the provisions of that article.

As this is the sole ground of objection that is urged to the administrator's claims against the minors, in our opinion they were correctly allowed.

II.

In respect to the complaint made by the opposing minors of the alleged maladminstration of the administrator, resulting in a loss of about seventy-five (75) mules out of a total of one hundred and six (106) that were included in the inventory of 1883, under which he went into possession, and which were appraised and listed thereon at one hundred dollars each, making an aggregate valuation of $10,600, it appears that the judge below regarded it as the basis of the administrator's liability, and he gave judgment accordingly.

It is on this theory that the argument of the minor's counsel proceeds—insisting that, immediately upon his qualification in July of 1883, the administrator took charge and managed, operated and cultivated the succession plantations, upon *his individual* account, and continued so to do until the 1st of January, 1888. 39 An. 702.

31*

That in the cultivation of said plantations the administrator used and employed the mules in question.

Thereupon, the insistance of counsel for the minors is that, as administrator, it was his plain, legal duty to have caused a sale to be made of the mules, within ten days after his qualification, in pursuance of the terms of R. C. C. 1051 and 1163.

To this claim the administrator's counsel replies that it is a fact that has been ascertained by this court that the succession was not only perfectly solvent when opened, but owed no debts, and, consequently, there was no occasion for the sale of the mules.

The further answer is made that during the years since 1883 the mules were used and worked on the succession plantations, to which they were attached, and with which they were leased annually; and that Chaffe was condemned personally to pay a rental of $4000 per annum therefor, from July, 1883, to January 1, 1888; and that the minors enjoyed their proportionate share of the revenues of the plantations and the mules, and are equitably estopped from urging any complaint of such use and enjoyment, or of the consequent loss sustained.

Referring to the first article cited (1051), it appears to point out the steps to be taken as a conservative measure, pending the acceptance or renunciation of a succession by the heirs, for it is prefaced by the declaration that "the administrator can not sell the immovables of the succession committed to his charge *until the term for deliberation has expired;*" and then it directs that "if there be any (movables) liable to be *wasted* or *expensive to keep,* he *can* sell them on the *special* authorization of the judge," etc.

Surely, no such condition existed in this case. The mules were neither liable to be wasted nor expensive to keep, because they were attached to the plantations and leased and used therewith. And, besides, all the heirs, minors as well as majors, have, long since, accepted the succession; and the law imposed no duty on the administrator to sell, but gave him *permission* to do so, upon first securing the special authorization of the judge.

We fail to find in the other article mentioned (1163) any more definite duty imposed upon the administrator, though it is quite true it says, viz. :

"The curator is bound, in ten days after his appointment, to demand that all the *remaining* movable effects      *      *      be sold."

But the word "remaining" connects that article with the one preceding it, which declares, viz.:

" When there are, in a vacant succession in which the heirs, or a part of them, are absent from and not represented in the State, movable effects which are *perishable* or *costly to keep*, the judge can, * * before the succession is opened, order the sale of them," etc. R. C. C. 1162.

By no means can those articles be extended to a *solvent and accepted* succession to which there are no absent heirs.

Even if they are to be taken as strictly applicable, they denounce against the curator or administrator failing to observe their requirements no penalty of any kind, and, in the absence of such provisions, it is manifestly our province to judge of the dereliction and of its consequences.

The rule of conduct which the code prescribes for a curator, or administrator, is that—

" Every curator of a vacant succession, or of absent heirs, is bound to take care of the effects intrusted to him, as a prudent administrator, etc. * * He is responsible for all damages caused by his *misconduct*." R. C. C. 1147.

It is not alleged, proved or argued that the administrator did not take care of the property entrusted to him as a faithful administrator. It is not pretended that any damage happened to the mules through any *misconduct* of his. On the contrary, his administration has been admittedly clean, fair and faithful; and the loss of the mules seems rather to have been occasioned by natural causes, such as work, over-age and ordinary use will bring about. For such losses the administrator can not be made liable on the score of *misconduct*.

It is evident, to our minds, that the allowance made on this score was erroneous, and must be disallowed and rejected.

### III.

While, technically speaking, the debts and charges that are marshalled by the administrator upon the final account and accompanying tableau are not debts of the *deceased*, yet they are evidently debts of the *succession*, and, as such, they are debts of high privilege, for the code says:

" The *charges against a succession*, such as funeral charges, *law charges, lawyer's fees for settling the succession* * * and all *claims*

*against the succession originating after the death of the person whose succession is under administration are to be paid before the debts contracted by the deceased,*" etc. (R. C. C. 3276), and those in question are of that character.

It is therefore evident that the following argument of counsel fails to support the theory he has advanced, viz.:

" Hence it follows that the debts for which the administrator seeks to sell the property of the succession, with the exception, possibly, of his commission, are not even charged as debts of the succession, *inherent to it as acts of the deceased,* but they are avowedly debts of the heirs individually, contracted by them since the death of their ancestor, since the opening of her succession, and growing out of causes and transactions entirely indépendent of, and foreign to, the succession." (Our italics.)   Brief of opponent's counsel, p. 10.

### IV.

In so far as the unmatured note for the sum of $4000, balance due on plantations rents, is concerned we see no occasion to prolong an administration already too greatly protracted. That note may be quite as well surrendered into the possession of the heirs as any other asset of the succession, and collected by them.

In our opinion the district judge erroneously sustained and perpetuated the injunction against the probate sale, and his judgment ought to be amended.

It is therefore ordered and decreed that the judgment appealed from be so amended as to dissolve the opponent's injunction against the sale proceedings at their cost; and so as to reject and disallow all of their demands.

And, as thus amended, it is ordered and decreed that the judgment homologating the administrator's final account, and the accompanying tableau of debts, be affirmed, and the administrator be authorized and directed to proceed with the sale to pay the debts and charges thereon placed.

And it is finally ordered that, upon due compliance with the decree of the lower court in the premises, he be finally discharged.