904

## FAVRE v. CELOTEX CO.
### No. 944.

Court of Appeal of Louisiana. First Circuit.
March 8, 1932.

Edw. Rightor and W. H. Sellers, both of New Orleans, for appellant.

Pugh & Lanier, of Thibodaux, for appellee.

LE BLANC, J.

The plaintiff in this suit is the mother of a young man who was accidentally killed while in the course of his employment with the defendant, the Celotex Company. She demands compensation on the ground of partial dependency.

She alleges that she was married to Antoine Billard on December 31, 1906, and that, during the existence of the marriage, there were born ten children, among them the decedent herein, who was named Joseph and who was born March 17, 1911. The petition sets out the wages that her son was earning as well as the amount he contributed to her support, on the basis of which she claims she is entitled to judgment in the sum of $1,535.53 payable in 300 weekly installments, with 5 per cent. interest from date of maturity of each installment.

The defense to the action is that the deceased boy, who is called Joseph Favre in defendant's answer, was an adulterous bastard at the time of his death, and, because of his status as such, the plaintiff is incapable of inheriting from him or from claiming any rights by reason of his death.

The sole issue, as appears from an agreement dictated in the record, is the one of legal dependency of the plaintiff on the deceased. There was a question raised also as to the amount of his weekly average wages and whether or not the board which had been furnished him by the employer could be taken into account in fixing his wages. The district judge excluded an offer, after having admitted it subject to objection, by which the defendant attempted to prove that the decedent was an adulterous bastard, and awarded plaintiff compensation in an amount which the defendant, who has appealed, finds correct, if she is entitled to any judgment at all. Plaintiff has not answered the appeal, and expresses her satisfaction with the judgment as rendered. Our task, therefore, is merely to decide whether or not the trial judge properly excluded defendant's offer. The offer, of course, is in the record before us, and we necessarily have to refer to it in reviewing the ruling of the lower court. It consisted of an application to the court, made by the plaintiff in January, 1927, for permission to enter into a second marriage, in view of the continued absence of her husband, Antoine Billard, since January, 1908, a period of more than ten years, without ever having seen or heard from him. The allegations of fact made in the application are sworn to by her.

Plaintiff, in her petition in the present proceeding, had alleged, as it will be recalled, that her deceased son, Joseph, was born on March 17, 1911, and, as her application for remarriage, duly sworn to, contained a statement of fact that her husband Billard had not been seen nor heard from by her since 1908. the thought immediately suggested itself that the deceased could not possibly have been Billard's son.

The objection to the offer was made in the following language: "The above evidence is objected to on the ground that, under the articles of the Civil Code and the jurisprudence of this State, the question of the legitimacy of a child born under these circumstances can only be put at issue by the father during his lifetime, and by his children within a limited time after his death. That the law and jurisprudence forbid his legitimacy to be attacked, unless the party, upon whom the attack is made, is made a party to the proceedings. And the jurisprudence is, carrying out the articles of the Code, that the child born during the existence of the marriage is presumed to be the child of the husband."

We are of the opinion that the objection urged on the ground that the legitimacy of a child can only be put at issue by the father during his lifetime, and by his children within a specified time after his death, is amply supported by the authorities dealing with the subject under our law in Louisiana, and that the ruling of the district judge was proper and correct.

The presumption in favor of the legitimacy of children, resulting from marriage, has its limitations, as is well pointed out in the Civil

Code. One of these articles, No. 189, prescribes that the presumption of paternity, as an incident to the marriage, is at an end "when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible," and we find the defendant especially invoking the provisions of that article to defeat the presumption in this case, in view of the circumstances presented in plaintiff's application to contract another marriage, duly sworn to by her. However, following the articles referred to, comes article 191, which prescribes that "in all the cases above enumerated, where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of the child must do it within one month, if he be in the place where the child is born or within two months after his return, if he be absent at that time, or within two months after the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making any objection to the legitimacy of such child." Article 192 then provides that if the husband die "without having made such objection" how his heirs shall be granted two months to contest the legitimacy of the child. Nowhere does it appear among these various provisions of the Code that the mother or any one else enjoys the right to institute an action to disavow a child—"action en desaveu" as it is also referred to. In Succession of Saloy, 44 La. Ann. 433, 10 So. 872, 875, the Supreme Court states in very specific terms that it is an action exclusively personal to the husband, the right to exercise which falls only to his heirs under certain conditions. "The action en desaveu," we read in the opinion, "belongs only to certain persons exactly determined; that is, the husband and his heirs. It belongs neither to the mother nor to her heirs." The law makes the husband the sole judge of whether such action should be pursued "with a reserve of the right to his heirs of doing so in the event of his death within the delay. He is the only one who, perhaps, can know that he is not the father. Where, aware of the circumstances under which he might have exercised the right of repudiation, the husband, who is the sovereign arbiter of his honor, fails to do so, the door is forever closed, and no one can afterwards assert a right strictly personal to him." The court in that case advanced the most cogent and potent reasons on which this rule of law, enacted in the interest of the sanctity of the marital relation, is based.

Later decisions of the Supreme Court on the same subject have only served to strengthen the views expressed in the Saloy Succession case. See McNeely v. McNeely, 47 La. Ann. 1324, 17 So. 928, Succession of Flynn, 161 La. 709, 109 So. 395. In Ezidore v. Cureau's Heirs, 113 La. 839, 37 So. 773, 775, the court said: "We consider that the sole question of law in this case has been settled by our state jurisprudence, and that no useful purpose would be subserved by reviewing the French authorities on the subject. The rule in this state is founded on considerations of public policy, which forbids that the question of the legitimacy of a child conceived and born during marriage, and never disavowed by the father in the mode prescribed by law, be raised by any one after his death. The reasons for this rule were ably expressed by the late Chief Justice Bermudez in the Saloy Case, after a review of all the authorities, and are the same, whatever may be the form of litigation in which the question is raised."

Counsel for defendant attempts to differentiate the present case from the Saloy Case on the question of the burden of the proof placed on the respective parties plaintiff, but we are unable to carry the distinction to the point where it would have any effect on the ultimate ruling to be made on the issue involved. The question does not appear to us to be one involving the burden of proof, but rather the right on the part of any one except those especially authorized to raise the issue to offer any proof at all, and this, regardless of the form of litigation in which it is raised. The father, the only one authorized to do so, having never disavowed the child in this case, the law forbids that its legitimacy be raised by the mother or any one else.

We are convinced of the correctness of the ruling of the lower court on the objection to the offer of the document in question, and the judgment is therefore affirmed.

ELLIOTT, J. (dissenting).

The Celotex Company, not a member of the family in question, is sought to be held to pay a large sum of money based on an alleged relationship which the defendant says does not exist, and is spurious. It does not seem to me that the act of the alleged father or his failure to act, or the failure of any member of the family to act, can foist on the Celotex Company the obligation to pay a sum of money, which, if the defense is correct, amounts to a fraud on the defendant, should the defendant be required to pay it.

For these reasons, I dissent.