152 So. 543

**Succession of BARTH. \***

**No. 31759.**

Jan. 2, 1934.

Rehearing Denied Jan. 29, 1934.

James J. Landry and James O'Connor, Jr., both of New Orleans, for appellant.

Harold A. Moise, of New Orleans, for appellee.

O'NIELL, Chief Justice.

Nicholas J. Barth died in New Orleans on the 11th of January, 1931, leaving a will in which he bequeathed to his widow, Margaret O'Brien Barth, everything that he died possessed of. The estate consisted of both real and personal property, valued at $8,435. The

*For opinion conforming to answer to certified question, see 153 So. 44.

will was admitted to probate; and, by an ex parte judgment of court, the widow was sent into possession of the estate unconditionally, as owner.

Thereafter, Joseph Vincent Barth brought this suit against the widow, Margaret O'Brien Barth, to be recognized as the son, and only forced heir, of the deceased, and to annul the ex parte judgment recognizing Mrs. Barth as the universal legatee. The plaintiff averred that Nicholas J. Barth was married to Alice Duffy, in New Orleans, on the 22d day of October, 1903, and that he (Joseph Vincent Barth) was born of that marriage on the 29th of May, 1904—long before his father married Margaret O'Brien. The plaintiff averred that the instrument purporting to be ·the will of Nicholas J. Barth was merely an attempt on his part to disinherit his only son, and was null for want of a cause for the disinheritance of a forced heir. He prayed, therefore, that the instrument should be decreed null, but that, if it should be held valid as a will in favor of Mrs. Margaret O'Brien Barth, the bequest to her should be reduced to the disposable portion, two-thirds, of the estate, and that he should receive one-third of the estate as the only forced heir.

Mrs. Margaret O'Brien Barth, answering the suit, admitted that a marriage ceremony between Nicholas J. Barth and Alice Duffy was performed on the 22d of October, 1903, but averred that it was null, for want of the consent of Barth; and, in that connection, ·she averred, with some detail, that the brothers of Alice Duffy had compelled Nicholas J. Barth, vi et armis, and by threatening to take his life and putting him in great fear, to go through the ceremony of marrying Alice Duf-

fy, on the occasion referred to, but that the marriage was pronounced null by a decree of the civil district court for the parish of Orleans, on the 25th of January, 1909, in the suit entitled Nicholas Joseph Barth v. Alice Duffy, No. 83664 of the docket of that court. Hence the defendant averred that the plaintiff was not the legitimate child of Nicholas J. Barth.

On the trial of this case, the plaintiff proved by the testimony of a sister of Nicholas J. Barth that he (the plaintiff) was born of the marriage of Nicholas J. Barth and Alice Duffy; but, on the objection of the defendant's attorney, to the introduction of evidence for the plaintiff, and upon the attorney's producing and filing the record—particularly the judgment—in the suit of Nicholas Joseph Barth v. Alice Duffy, the judge refused to hear any more evidence, and announced that he would dismiss the plaintiff's suit, because, as the marriage of his parents was decreed null, his status was that of an illegitimate· child, even if he was born more than 180 days, or on the 210th day, after his parents were married. The judge therefore dismissed the plaintiff's suit at his cost. He has appealed from the decision.

The ruling complained of was founded upon the idea that the marriage of Nicholas J. Barth to Alice Duffy was null from the beginning, and not merely from the time when Nicholas J. Barth saw fit to have it decreed null, for want of his consent to the marriage. It is true, according to article 91 of the Civil Code, that a marriage is not valid unless the parties have consented freely; that is to say, if the consent is extorted by violence; but, according to article 110 of the Code, a marriage celebrated without the free consent of

one of the parties "can only be annulled upon application of * * * that one of them whose consent was not free." Hence a marriage which one of the parties was forced to consent to is not null ab initio, but may "be annulled" at the instance only of the party who was forced to consent to the marriage. Such a marriage is not even subject to annulment except on the complaint of the party who was imposed upon. And, according to article 111 of the Code, he, or she, as the case may be, who was compelled to consent to the marriage, has no right of action to annul it "if the married persons have, freely and without constraint, cohabited together after recovering their liberty."

The consequence of these provisions of the Code is that a marriage celebrated according to the forms of law, even though the consent of one of the parties was compelled by violence and by putting him or her in fear, must be regarded as a valid marriage until it is annulled by a judicial decree rendered in a direct action of nullity. It was so held in State v. Loyacano, 135 La. 945, 66 So. 307. In that case the defendant, having been compelled by violence to marry a woman, was prosecuted afterwards by her for violating Act No. 34 of 1902, by deserting and refusing to support her, and, on his motion, the judge of the criminal district court stayed the prosecution until the question of validity of the marriage could be decided in a suit which the husband filed in the civil district court to annul the marriage; but, on a writ of certiorari, issued at the instance of the district attorney, this court ordered the judge to proceed with the criminal prosecution, notwithstanding the action of nullity was pending in the civil district court. Referring to the rulings to the same effect in State v. Barilleau, 128 La. 1033, 55 So. 664, and State v. Donzi, 133 La. 925, 63 So. 405, the court said:

"These two cases hold in effect that a prosecution under Act 34 of 1902 cannot be affected by the pendency of a suit by the husband to annul the marriage. To hold otherwise would enable a recalcitrant husband to evade his obligation to support his wife and children for an indefinite period of time. A marriage celebrated according to law must be treated as valid until annulled by the decree of a competent court in a direct action of nullity."

The rule prevails in other jurisdictions, as expressed in 38 C. J. p. 1280, § 9, thus:

"Where an ostensible marriage is void ab initio, no civil rights can be secured thereby, and it may be inquired of in any court where rights are asserted under it, and after the death of either or both of the parties. Where, however, the marriage is voidable merely, it is valid for civil purposes until its nullity has been pronounced by a competent court, which may be done only during the lifetime of the parties, the marriage being good ab initio after the death of either of the parties, for all purposes."

And in 18 R. C. L. p. 440, §§ 68, 69, the rule is stated thus:

"Modern civilization strongly condemns the harsh doctrine of ab initio sentences of nullity. A definition of voidable and void marriages which will closely fit modern conditions is that a marriage may be considered voidable though prohibited by law when it is possible, under any circumstances, for the parties to contract the marriage, or subsequently. to ratify it, while it should be consid-

ered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any conduct to ratify it, and if the statute expressly declares that the marriage is void. * * *

"The general rule is that a voidable marriage is regarded as practically valid by all courts until its nullity has been declared in a proper proceeding, during the lifetime of the parties."

On pages 446, 447, §§ 76, 77, of the same book, it is said:

"So, while it has been held that a marriage ceremony performed while one of the parties thereto was actually under legal duress is absolutely void, the weight of authority is apparently to the effect that such a marriage is voidable only, and therefore is valid and binding upon the parties until annulled by a court of competent jurisdiction. In some jurisdictions marriages induced by duress are the subject of statutory regulation, such statutes usually, either expressly or in effect, rendering such marriages voidable only.

"* * * But a voidable marriage is valid for all purposes until avoided or annulled, and it cannot be attacked collaterally, but only in a direct proceeding during the lifetime of the parties."

Our opinion, therefore, is that the plaintiff should be allowed to prove, if he can prove, his allegation that he was born more than 180 days—the date alleged being the 210th day—after the date of the marriage of his mother to Nicholas J. Barth. The Civil Code (in article 184) declares that the law considers the husband of the mother as the father of her children conceived during the marriage. In article 186 it is declared that a child born before the 180th day after the marriage, and capable of living, is not presumed to be the child of the mother's husband; which is the same as to say that the child was conceived before the marriage. But, in Harrington v. Barfield, 30 La. Ann. 1297, article 186 of the Civil Code was construed to mean that the converse of the proposition also is true, viz.: "The child born after one hundred and eighty days after marriage is presumed to be the husband's child." This presumption, according to article 189 of the Civil Code, cannot be overcome except by the proof that the husband was so far away from the wife, when the child was conceived, that cohabitation was "physically impossible"; and such proof is admissible only in the cases where, according to articles 190 to 192, the husband may disavow the paternity of his wife's child. In such cases, in order to overcome the presumption of paternity, the proof must be, literally, that cohabitation between the husband and wife was, as the Code says, "physically impossible." In Tate v. Penne, 7 Mart. (N. S.) 548, it was said: "The legal presumption of the husband being the father, and of access being presumed in cases of voluntary separation can only be destroyed by evidence bringing the parties within the exception the law has created to the rule, namely, the physical impossibility of connection—moral will not do." To the same effect, see Vernon v. Vernon's Heirs, 6 La. Ann. 242; and Switzer v. Switzer, 170 La. 550, 128 So. 477.

The attorney for Mrs. Margaret O'Brien Barth contends that the judgment which was rendered in favor of Nicholas J. Barth and

against Alice Duffy, in his suit against her, declaring their marriage null, on the 25th day of January, 1909, settled forever, as a fact, that there had been no cohabitation between them after the marriage ceremony, because, according to article 111 of the Civil Code, Nicholas J. Barth could not have obtained "a sentence annulling the marriage" without proof that he had not consummated the marriage. Hence it is argued that the decree annulling the marriage was, in effect, a decree that if a child was conceived by the wife during the marriage the husband was not the father of the child. The argument would be a very logical one but for the fact that Joseph Vincent Barth, the plaintiff in this suit, was not a party to or represented in the suit in which the marriage of his mother to Nicholas J. Barth was annulled; hence Joseph Vincent Barth is not bound by, or committed to, the proof of any fact on which that judgment was founded. The suit to annul his mother's marriage was filed on the 17th of September, 1907, when he was three years and nearly four months old; and yet the fact that the defendant in the suit had a child was not mentioned in the pleadings or in the evidence. The judgment was taken by default, and was confirmed in the absence of the defendant, more than thirteen months after the preliminary default was entered, and was signed fifteen months after the preliminary default was entered, and three years and eight months after Joseph Vincent Barth was born.

There is no dispute about the validity of the judgment which annulled the marriage of Alice Duffy to Nicholas J. Barth. In fact, it is admitted in the plaintiff's petition in this

suit that the defendant, Mrs. Margaret O'Brien Barth, "was decedent's second wife." But that does not mean that the judgment annulling Nicholas J. Barth's first marriage had the effect of a disavowal of the paternity of the first wife's son, or the effect of pronouncing him illegitimate. In fact, it was decided in Dejol v. Johnson, 12 La. Ann. 853, that the disavowal of the paternity of a child cannot be accomplished except by a judicial proceeding on the part of the husband of the child's mother, and that it is necessary that the child be made a party, and be represented, in such a proceeding. In Dejol v. Johnson, the court said:

"The legal presumption, that the husband of the mother is the father of all children conceived during the marriage, can only be rebutted in the mode and within the time prescribed by law.

"The right to disavow or repudiate a child born under the protection of the legal presumption, is peculiar to the father and can be exercised only by him or his heirs within a given time and in certain cases; and if the father renounces the right expressly or tacitly, it is extinguished and can never more be exercised by any one.

"The disavowal by the father must be made in a judicial proceeding, an action to which the child is a necessary party. If the father has never legally contested the legitimacy of a child born in lawful wedlock, mere oral and ex parte declarations of the father, or his wife or of the child whose claim is contested, touching the legitimacy, cannot be received as evidence."

█ █ It is not disputed that the plaintiff is the son of Mrs. Alice Duffy Barth, the first

wife of Nicholas J. Barth. It is not admitted that the plaintiff was born more than 180 days after the marriage of his mother to Nicholas J. Barth; and the ruling of the judge prevented the proving of the date of the plaintiff's birth. Our ruling is that the plaintiff is entitled to make such proof. If he was born of Mrs. Alice Duffy Barth more than 180 days after her marriage, he is in law the legitimate son of her husband, Nicholas J. Barth, deceased. It is not necessary for the plaintiff to prove cohabitation on the part of his parents. The Civil Code declares, in the second paragraph of article 188, "in case of voluntary separation, cohabitation is always presumed, unless the contrary be proved." That presumption in favor of the plaintiff in this case cannot be affected by anything that was proved or decided in the suit in which the marriage of his father and mother was annulled, and to which the plaintiff in this suit was not a party. A judicial decree cannot so establish a fact that a third party, who is not a party to the suit in which the judgment is rendered, cannot afterwards dispute the fact, either by contradictory evidence or by a presumption which the law establishes in his favor. In Breedlove v. Turner, 9 Mart. (O. S.) 376, as long ago as 1821, and again in Williams v. Trepagnier, 1 Mart. (N. S.) 271, in 1823, it was said: "A judgment is not evidence against third parties of the truth of facts on which it was rendered." To the same effect, see the long line of decisions reviewed in Smith v. Little Pine Lumber Co., 150 La. 720, 91 So. 165.

In the Succession of Taylor, 39 La. 823, 2 So. 581, cited by the attorney for the defendant in this suit, the reason why the children born of a marriage that was afterwards declared null were declared illegitimate was that the marriage was null ab initio, being a bigamous marriage.

The attorney for the defendant cites also Wheeler v. Turlich, 176 La. 301, 145 So. 546, where, in a suit for the nullity of a marriage, it was said that the presumption of paternity, established by articles 184, 190, and 191 of the Civil Code, resulted only from proof of a valid and existing marriage. But, in that case, the defendant's child was born within the 180 days—in fact, on the 165th day—after the marriage; and all that was decided with reference to the paternity of the child was that, even though the plaintiff might have lost his right of action to disavow the paternity of the child, that would not deprive him of his right of action to annul the marriage.

■ We do not find any merit in the plaintiff's contention that the will of Nicholas J. Barth is null because it was an attempt to disinherit a forced heir without a legal cause for disinheritance. If the plaintiff is, as he alleges, the forced heir of the deceased, the disposable portion of the estate was only two-thirds. Rev. Civ. Code, art. 1493. But a will by which the testator attempts to dispose of more than the disposable portion of his estate is not null, but only reducible to the disposable portion. Rev. Civ. Code, art. 1502.

The judgment appealed from is annulled, and the case is ordered remanded to the civil district court for further proceedings consistent with the opinion rendered herein. The costs of this appeal are to be borne by the defendant; all other court costs are to abide the final disposition of the case.