**167 So. 747**

**LEJEUNE v. LEJEUNE et al.**

**No. 33305.**

March 30, 1936.

Laycock & Moyse, of Baton Rouge, for appellant.

Joseph W. Starring, curator ad hoc, and Scallan E. Walsh, both of New Orleans, for appellees.

HIGGINS, Justice.

This is a suit by Alvin M. LeJeune to disavow the paternity of a child born to his former wife, Adelaide James LeJeune, on the grounds that, because of his remoteness from his wife, cohabitation between them was physically impossible; and that the child was conceived as the result of an adulterous union between his former

wife and William E. Salyards and the child's birth was concealed from plaintiff.

Defendants filed exceptions of no cause or right of action to the petition. The plaintiff has appealed from the judgment of the lower court sustaining the exceptions and dismissing the suit.

■ Exceptions of no cause and no right of action must be decided on the face of the petition and every well pleaded fact therein contained, for the purpose of the exceptions, must be considered true and they must be overruled if the plaintiff is entitled to some relief under the allegations of his petition. Thompson v. General Accident, Fire & Life Assur. Corp., 155 La. 31, 98 So. 746; Davis v. Arkansas Southern Ry. Co., 117 La. 320, 41 So. 587; Doullut v. McManus, 37 La.Ann. 800; Hillard v. Taylor, 114 La. 883, 884, 38 So. 594; Central Improvement & Contracting Co. v. Grasser Contracting Co., 119 La. 263, 264, 44 So. 10; J. A. McCoy et al. v. Arkansas Natural Gas Co. et al., 183 La. 1079, 165 So. 632.

Under title 7 of the Revised Civil Code, on the subject of "father and child," section 1 of chapter 2, treats "of legitimacy resulting from marriage." The first article thereunder, No. 184, provides:

"The law considers the husband of the mother as the father of all children conceived during the marriage."

This has been termed by the courts to be the strongest presumption known in law, and in the case of Dejol v. Johnson, 12 La.Ann. 853, this court held that that pre-

sumption "can only be rebutted in the mode and within the time prescribed by law."

Plaintiff's action is based on the provisions of articles 185 and 189 of the Revised Civil Code, which read as follows:

"185. The husband can not by alleging his natural impotence, disown the child; he can not disown it even for cause of adultery, unless its birth has been concealed from him, in which case he will be permitted to prove that he is not its father."

"189. The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."

■ The facts, alleged in the petition, are substantially as follows:

That plaintiff's former wife, during September, 1932, began an adulterous connection with William E. Salyards; that during the latter part of 1932, he became suspicious of her conduct and from January, 1933, he ceased occupying the same room or cohabiting with her; that the conception of the child was concealed from him until April, 1933, when he notified his former wife that he intended to obtain a divorce from her because of her adultery with Salyards, and "at that time the conception was only hinted at by her"; that he filed suit for a divorce on May 15, 1933, charging her with adultery, and in her answer to his suit for divorce, sworn to on May 31, 1933, she stated that she had been pregnant for four months; that the decree of divorce was granted in favor of plaintiff on the 29th day of November, 1933;

that a male child was born to his former wife at the Lady of the Lake Sanitarium in the parish of East Baton Rouge on the 1st of December, 1933; that the birth of the child was concealed from him; that he obtained information as to its birth through outside sources; that because of his alleged remoteness from his wife during the period of conception up to the time of its birth, it was impossible for him to be the father of the child; that the child was born as the result of an adulterous union between his former wife and Salyards; that he did not know the name of the child, but was informed that it was given the name of Billy or William James LeJeune; and that the records of the bureau of vital statistics of the state of Louisiana did not show any name given to the child.

We have carefully reviewed the jurisprudence of this state on the subject of disavowal of paternity, a full discussion of which is to be found in the case of Beard v. Vincent, 174 La. 869, 141 So. 862. See, also, Succession of Barth, 178 La. 847, 152 So. 543, 545, 91 A.L.R. 408.

In the Succession of Barth, supra, we said, quoting from the case of Harrington v. Barfield, 30 La.Ann. 1297:

" 'The child born after one hundred and eighty days after marriage is presumed to be the husband's child.' *This presumption,* according to article 189 of the Civil Code, *cannot be overcome except by the proof that the husband was so far away from the wife, when the child was conceived, that cohabitation was 'physically impossible';* and such proof is admissible only

in the cases where, according to articles 190 to 192, the husband may disavow the paternity of his wife's child. *In such cases, in order to overcome the presumption of paternity, the proof must be, literally, that cohabitation between the* husband and wife was, as the Code says, *'physically impossible.'* In Tate v. Penne, 7 Mart.(N.S.) 548, it was said: *'The legal presumption of the husband being the father,* and of access being presumed in cases of voluntary separation *can only be destroyed by evidence bringing the parties within the exception the law has created to the rule, namely, the physical impossibility of connection—moral* will not do.' To the same effect, see Vernon v. Vernon's Heirs, 6 La.Ann. 242; and Switzer v. Switzer, 170 La. 550, 128 So. 477." (Italics ours.)

We do not think that the allegations of plaintiff's petition with reference to his remoteness from his former wife at the time of the child's conception show physical impossibility of cohabitation between them as required by article 189 of the Civil Code.

Do the allegations of plaintiff's petition with reference to the concealment of the birth of the child disclose a cause or right of action? We are assured by counsel that this court has not passed on a case involving this particular ground, which is covered by article 185 of the Civil Code. A reading of the articles of the Code demonstrates that the framers of our Code intended to shield domestic affairs as much as possible from the publicity of the courtroom. Consequently, they declared the hus-

band was presumed to be the father of the children conceived during marriage (article 184), and that he cannot even, by alleging his natural impotence, disown them (article 185). But the latter article contains the additional sentence: *"He can not disown it even for cause of adultery, unless its birth has been concealed from him, in which case he will be permitted to prove that he is not its father."*

This article clearly provides that if the husband and wife were living and cohabiting together, he cannot disown the child in case of his natural impotence, not even on the grounds of adultery, but that he shall be permitted to prove that he is not the father of the child, if his wife has concealed the birth of the child from him.

Counsel for defendants contend that plaintiff's allegations of concealment are contradicted by the other allegations of facts set out in his petition, to wit, that his wife hinted of her pregnant condition in April, 1933, and verified it in her sworn answer to his suit for a divorce in May, 1933; that she went to a public institution, Our Lady of the Lake Sanitarium, for the purpose of confinement and delivery; and that the birth of the child was recorded in the bureau of vital statistics of Louisiana.

In support of this contention, counsel call our attention to article 185, R.C.C., which is a direct translation of article 313 of the French Code, and quote a translation from G. Baudry Lacantinerie in the work entitled, "Traite de Droit Civil," vol. 3, "Des Personnes," from page 391, as follows:

"For the disavowal to be possible it is necessary that the wife should have concealed the birth of the child. As for knowing what are circumstances from which results the concealment, that is but a question of fact to be decided by the judge in case of contestation."

And on page 393, we find:

"The law requires that there should have been a long concealment on the part of the mother. The law requires the concealment of the birth *which implies the concealment of the pregnancy."* (Italics ours.) (See, also, Saunder's "Lectures on the Civil Code," p. 46.)

This commentator in the same text, in discussing the adultery of the mother, on page 391, says:

"The adultery of which the husband makes proof must coincide with or be about the time of the conception of the child. The law permits in fact, the disavowal for adultery. It is not to be understood that the adultery would be a cause for disavowal if it was committed at a time far distant from that of the conception. On the other hand it has been said that the law does not exact expressly that the time of the adultery coincides exactly with that of the conception. At whatever time it was committed it reveals the immorality of the mother, and, consequently weakens the presumption of paternity. We recognize however, that, as the law does not easily permit it, the disavowal of paternity is not established by an inference equally as weak. It is necessary that one must be able to draw from the adultery of the

mother a serious presumption against the paternity of the husband. Now, the mere fact that the wife has been guilty once does not mean that she has been guilty always. On the other hand, proof of adultery committed at the probable time of conception shakes strongly the presumption that the husband is the father of the child.

"All sorts of ways may be used to prove the adultery and the time at which it was committed. The confession of the mother ought not, however, to be accepted as a certain proof because the status of the child ought not to depend upon the will of the mother. The courts will decide.

"Although the proof that the adultery coincided with the time of the conception shakes strongly the presumption of paternity of the husband, it does not suffice to destroy it. The Roman Law gives us the reason for this when it says: 'It is possible for a married woman to be an adultress and for the child to have as its father the husband.'"

Webster's New International Dictionary, Second Edition, defines the verb "conceal," as follows:

"To hide or withdraw from observation; to cover or keep from sight; to prevent the discovery of; to withhold knowledge of. * * *"

While the husband makes the general statement in his petition that the birth of the child was concealed from him, a mere conclusion on his part, he alleges facts which show a line of conduct on the part of his wife entirely inconsistent with concealment or secrecy. It is difficult for us to imagine in what better way she could have placed her husband on notice that she was going to give birth to a child other than by apprising him of her pregnant condition. In the natural course of events, it was inevitable that a child would be born. He could not, by his own indifference to the result which was to naturally and normally follow, say that the birth of the child had been concealed from him. The slightest inquiry on his part would have revealed that the child had been born. There was nothing hidden from him. The law does not require her to formally notify him of the child's arrival. The facts that he had been told twice of her delicate condition, that she went to a quasi public institution to be confined, and that she registered the birth of the child are the antithesis of hiding and concealing the birth of the child from her husband. Certainly, this is not the kind of concealment contemplated by article 185 of the Revised Civil Code.

The trial court properly sustained the exceptions of no right or cause of action and the judgment is therefore affirmed, at plaintiff's costs.

FOURNET, Justice.

I concur in the views expressed as to article 189, but dissent on the views expressed as to article 185 of the Code.