**ELLIS et al. v. HENDERSON et al.**

No. 14382.

United States Court of Appeals
Fifth Circuit.

May 1, 1953.

Rehearing Denied June 17, 1953.

Jesse S. Guillot, New Orleans, La., for appellants.

Alfred C. Kammer, New Orleans, La., G. Harrison Scott, Asst. U. S. Atty., New Orleans, La., for appellees, Rosen, Kammer, Hopkins, Burke & Lapeyre, New Orleans, La., of counsel.

John N. McKay, U. S. Atty., New Orleans, La., for appellee Henderson, Harry N. Routzohn, Sol. of Labor, Dayton, Ohio, Ward E. Boote, Asst. Sol., and Herbert P. Miller, Atty., U. S. Dept. of Labor, Washington, D. C., of counsel.

Before HOLMES, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The nine appellants, plaintiffs in the district court, brought this action under 33 U.S.C.A. § 921(b) to review the order

of the Deputy Commissioner denying their claims for compensation under the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., arising out of the death of their alleged father, Edward Ellis. The Deputy Commissioner found "that not any one of the said nine children named above is a child, or children, of the deceased, Edward Ellis, but are children of Charles Joseph Southall born to Albertha W. Ellis by him, and none (no one) of the said children is entitled to compensation (death benefits) under the provisions of the said Act for the death of the decedent, Edward Ellis."

The appellees, defendants below, moved to dismiss the complaint because it failed to state a claim upon which relief could be granted, insisting that the findings of the Deputy Commissioner were supported by substantial evidence. The district court sustained the motion, dismissed the complaint, and this appeal ensued.

The appellants plant their appeal solely upon the contention that since the Deputy Commissioner found that their mother was married to Edward Ellis on November 16, 1923 and never divorced, the children being born in wedlock, under the law of Louisiana, are now conclusively presumed to be the legitimate children of their mother's husband, Edward Ellis. If that contention is not sound, their appeal cannot be sustained. Hence the sordid facts need not be detailed. It is sufficient to say that instead of living together, each member of the marriage cohabited with another person of the opposite sex and the nine children were recognized as the children of one Southall and so registered until after the death of Edward Ellis. At the same time, the husband and wife continued to live in the same neighborhood each with the other.

Section 9 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 909, provides for compensation for the death of an employee, known as a death benefit, payable under the circumstances of this case to the "child or children of the deceased" employee, if any such existed. Paragraph (14) of section 2 of the Act, 33 U.S.C.A. § 902(14), refers to the word "child" in the following language:

" 'Child' shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom the deceased employee stood in loco parentis for at least one year prior to the time of injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him."

The word "child" is not further defined in the Act. That the word means not a mere biological fact but a relationship sanctioned by law is made clear by the provisions for a child "legally adopted" and for one to whom the deceased employee stood *"in loco parentis"*, and, even more significantly, by the distinction drawn between "child" and an "acknowledged illegitimate child". To be entitled to benefits, the latter must be "dependent upon the deceased"; as to the former, when under eighteen years of age, dependency is not required. 33 U.S.C.A. § 902(14); Turnbull v. Cyr, 9 Cir., 188 F.2d 455; Maryland Drydock Co. v. Parker, D.C.Md., 37 F.Supp. 717. The word "child" employed in a document expected to have legal significance, and especially in a statute, to designate relationship with a father, would, without more, ordinarily refer to legitimate offspring.[1] Certainly the language of this Act makes it clear that "child", without more, means a "legitimate child".

"That a child born of a married woman during wedlock is presumed to be the child of her then husband is uniformly conceded. The only doubt has been whether and how far this presumption is conclusive; i. e., to what extent it is a fixed rule of substantive law defining the legal quality of legitimacy." 9 Wigmore on Evidence, 3rd

---

1. See 14 C.J.S., Child, pp. 1106–1110; 7 Words and Phrases, p. 4 et seq.; 1 Bou. Law Dict., Rawles Third Revision, p. 479; see also Black's Law Dictionary; Ballantine's Law Dictionary, and Webster's New International Dictionary, Second Edition (1951).

Ed., Sec. 2527. Professor Wigmore continues, "At the outset of the law, it appears to have allowed no dispute, except by the fact of the husband's absence 'beyond the four seas' of England during the appropriate period". The courts are now at wide variance as to the stage to which the doctrine has been developed. Marshall, as a Circuit Justice, thought "that this presumption of law may be rebutted by testimony which places the negative beyond all reasonable doubt". Stegall v. Stegall, 1825, 22 Fed.Cas.No.13,351, pp. 1226, 1231, 2 Brock 256. In an early and famous case from Louisiana, Mr. Justice Wayne, speaking for the Supreme Court, said: "Once the marriage is proved, nothing shall be allowed to impugn the legitimacy of the issue short of the proof of facts showing it to be impossible that the husband could be the father." Patterson v. Gaines, 6 How. 550, 588, 47 U.S. 550, 573, 613, 12 L.Ed. 553. Different courts have adopted such varying standards as "impossible", "beyond a reasonable doubt", "conclusive", "strong, satisfactory and conclusive", "irrefragable", "irresistible", "clear", "cogent", "strong", while a few have indicated that a mere preponderance is enough. See Wigmore, supra; Annotation 128 A.L.R. 713; Note, 33 Harvard L.Rev. 306; 7 Am.Jur., Bastards, Sec. 14.

The reasons for the presumption are also variously given, such as the general presumption of innocence, the public policy to protect the sanctity of the marital relationship and to defend children, innocent in any event and yet the chief sufferers, and the desire to avoid scandalous and degrading testimony. See authorities last cited and Feazel v. Feazel, 222 La. 113, 62 So.2d 119, 122.

Of course, insofar as the definition in the federal statute is complete in itself it controls. For example, the expression "acknowledged illegitimate child" is not influenced by the provisions of a state statute requiring paternity to be acknowledged in writing. Weyerhaeuser Timber Co. v. Marshall, 9 Cir., 102 F.2d 78, 81.

The terms of the statute extend the status of "child" to include the classes of persons named in paragraph 14 of section 2 of the Act, 33 U.S.C.A. § 902(14), but otherwise Congress' definition of "child" in the Act is not complete. For example, it is left undetermined by the Act whether or not the progeny of a "common law" marriage, recognized as legal in some states and not in others, are the legitimate children of the father.

If the question were one merely of admissibility of evidence, then we might look to the more liberal rule favoring admissibility, whether state or federal. Rule 43, Federal Rules of Civil Procedure, 28 U.S.C.A. The language of that rule, "shall be admitted", is inappropriate for determining the burden of proof. 1 Wigmore on Evidence (3rd ed. 1940), Section 6c, p. 201. In any event the Supreme Court has indicated that burden of proof is not procedural but substantive. Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 212, 60 S.Ct. 201, 84 L.Ed. 196; Central Vermont Ry. Co. v. White, 238 U.S. 507, 512, 35 S.Ct. 865, 59 L.Ed. 1433; see 55 Harvard Law Review 211.

A *fortiori*, what is termed a "conclusive presumption", in most instances is actually a rule of substantive law. U. S. v. Provident Trust Co., 291 U.S. 272, 283, 54 S.Ct. 389, 78 L.Ed. 793; U. S. v. Jones, 9 Cir., 176 F.2d 278, 288; In re Jones' Estate, 110 Vt. 438, 8 A.2d 631, 128 A.L.R. 704, 709; 9 Wigmore on Evidence (3rd ed. 1940) Sec. 2492; 20 Am.Jur. Evidence, Sec. 160. A "conclusive presumption" as a rule of evidence without logical basis might be constitutionally invalid, but if the rule of substantive law would be constitutional, the form of words used in stating the rule is immaterial. City of New Port Richey v. Fidelity & Deposit Co. of Maryland, 5 Cir., 105 F.2d 348, 351, 123 A.L.R. 1352; 20 Am.Jur. Evidence, Sec. 10.

The problem of determining the meaning of "child" in this Act is very similar to that faced by the Supreme Court in defining "next of kin" as used in the Federal Employers' Liability Act, and what was said for the Court by Chief Justice White is pertinent here:

"Plainly the statute contains no definition of who are to constitute the

next of kin to whom a right of recovery is granted. But, as speaking generally under our dual system of government, who are next of kin is determined by the legislation of the various states to whose authority that subject is normally committed, it would seem to be clear that the absence of a definition in the act of Congress plainly indicates the purpose of Congress to leave the determination of that question to the state law. But, it is urged, as next of kin was a term well known at common law, it is to be presumed that the words were used as having their common-law significance, and therefore as excluding all persons not included in the term under the common law; meaning, of course, the law of England as it existed at the time of the separation from the mother country. Leaving aside the misapplication of the rule of construction relied upon, it is obvious that the contention amounts to saying that Congress, by the mere statement of a class, that is, next of kin, without defining whom the class embraces, must be assumed to have overthrown the local law of the states, and substituted another law for it; when conceding that there was power in Congress to do so, it is clear that no such extreme result could possibly be attributed to the act of Congress without express and unambiguous provisions rendering such conclusion necessary. The truth of this view will be made at once additionally apparent by considering the far-reaching consequence of the proposition, since, if it be well founded, it would apply equally to the other requirements of the statute,—to the provisions as to the surviving widow; the husband and children, and to parents, thus, for the purposes of the enforcement of the act, overthrowing the legislation of the states on subjects of the most intimate domestic character, and substituting for it the common law as stereotyped at the time of the separation. The argument that such result must have been intended, since it is to be assumed that Congress contemplated uniformity, that is, that the next of kin entitled to take under the statute should be uniformly applied in all the states, after all comes to saying that it must be assumed that Congress intended to create a uniformity on one subject by producing discord and want of uniformity as to many others." Seaboard Air Line Ry. Co. v. Kenney, 240 U.S. 492, 493, 494, 36 S.Ct. 458, 460, 60 L.Ed. 762, 765, 766.

Since that decision it has been settled that "next of kin" is determined by state law. Poff v. Pennsylvania R. Co., 327 U.S. 399, 401, 66 S.Ct. 603, 90 L.Ed. 749. Following the same line of reasoning, it has been held that state law controls as to whether one was a widow so as to be entitled to compensation under the present Act. Keyway Stevedoring Co. v. Clark, D.C., 43 F.2d 983; Green v. Crowell, 5 Cir., 69 F.2d 762; Bolin v. Marshall, 9 Cir., 76 F.2d 668.

Our search for the pertinent law of Louisiana which controls the legal status of children is simplified by a very recent opinion of the Supreme Court of Louisiana, Feazel v. Feazel, 222 La. 113, 62 So. 2d 119, 120, 121, in which that Court has restated the law with sufficient fullness:

"Under Article 184 of the LSA-Civil Code, the law considers the husband of the mother as the father of all children conceived during the marriage, and it has been said in the jurisprudence of this court that the presumption created by this article is the strongest presumption known in law. In Dejol v. Johnson, Administrator, 12 La.Ann. 853, it was said that this legal presumption 'can only be rebutted in the mode and within the time prescribed by law. "The right to disavow and repudiate a child born under protection of the legal presumption is peculiar to the father and can be exercised only by him, or his heirs, within a given time, and in certain cases. * * *"' The strength of this presumption was recognized by the court in the cited case by quoting with approval from Tate v. Penne, 7 Mart., N.S., 548, that '"a child born

during marriage cannot have its condition affected by the declaration of one or both of the spouses." '

"According to Article 189, this presumption may be rebutted when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible.

"In Tate v. Penne, supra, this court said:

" '* * * The legal presumption of the husband being the father, and of access being presumed in cases of voluntary separation, can only be destroyed by evidence bringing the parties within the exception the law has created to the rule, namely the *physical* impossibility of connexion-*moral* will not do.

" 'Now that physical impossibility can only be shewn, by proving the residence of the husband and wife to be so remote from each other that access was impossible. * * * '

"In Succession of Barth, 178 La. 847, 152 So. 543, 545, 91 A.L.R. 408, it was stated:

" '* * * The Civil Code (in article 184) declares that the law considers the husband of the mother as the father of her children conceived during the marriage. In article 186, it is declared that a child born before the 180th day after the marriage, and capable of living, is not presumed to be the child of the mother's husband; which is the same as to say that the child was conceived before the marriage. But, in Harrington v. Barfield, 30 La.Ann. 1297, article 186 of the Civil Code was construed to mean that the converse of the proposition also is true, viz.: "The child born after one hundred and eighty days after marriage is presumed to be the husband's child." *This presumption, according to article 189 of the Civil Code, cannot be overcome except by the proof that the husband was so far away from the wife, when the child was conceived, that cohabitation was "physically impossible"*; and such proof is admissible only in the cases where, according to articles 190 to 192,

the husband may disavow the paternity of his wife's child. *In such cases, in order to overcome the presumption of paternity, the proof must be, literally, that cohabitation between the husband and wife was, as the Code says, "Physically impossible." * * * '* (Italics ours.)

"Plaintiff resided with defendant for a period of seven days after the marriage, and both lived in the same city, Shreveport, for several months after their separation, that is, until the middle of March, 1948. The child was born on August 5, 1948. Under these circumstances he has not shown or proved that cohabitation was physically impossible, or that their residences were so remote from each other that access was impossible. Plaintiff has therefore not overcome the presumption of paternity in the manner provided by Article 189 of the LSA–Civil Code." See also LSA–Civil Code, Articles 184–192; Succession of Saloy, 44 La.Ann. 433, 10 So. 872; V Tulane Law Review, 449.

The Louisiana courts have further held that a defendant in a suit for compensation under the Louisiana Compensation Statute cannot attack a child's paternity if the deceased husband of the mother of the child did not bring an action to disavow such child within the period of time prescribed by Articles 184, 191, and 192 of the Louisiana Statutes Annotated—Civil Code. Jenkins v. Aetna Casualty & Surety Company, La.App., 158 So. 217; Favre v. Celotex Co., La.App., 139 So. 904; Harris v. Louisiana Oil Refining Corp., 13 La.App. 416, 127 So. 40. The same rule, we think, prevails under the Longshoremen's and Harbor Workers' Act. If a man can make himself legally the father of a child by adoption or by acknowledgment of one illegitimate, we see no reason why he cannot do so by failing to disavow paternity of his wife's child within the time allowed by law. The judgment is reversed for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STRUM, Circuit Judge (concurring).

I concur herein only because I am bound by the law of Louisiana, as it is correctly stated in the majority opinion.