**TEXAS EMPLOYERS' INSURANCE AS-SOCIATION and Burton Shipyard, Inc., Appellants,**

v.

**R. J. SHEA et al., Appellees.**

**No. 25715.**

United States Court of Appeals
Fifth Circuit.
April 10, 1969.

O. J. Weber, Jr., Keith, Mehaffy & Weber, Beaumont, Tex., for appellants; Dewey J. Gonsoulin, Beaumont, Tex., of counsel.

Ward Stephenson, Orange, Tex., Shelby K. Long, Port Arthur, Tex., Morton Hollander, Robert M. Heier, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., William Wayne Justice, U. S. Atty., for appellees.

Before GEWIN, PHILLIPS * and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

Our primary question is whether a posthumous illegitimate infant, the offspring of a deceased harbor worker, is a "child" entitled to benefits under the Longshoremen's and Harbor Workers' Compensation Act.[1] The Deputy Commissioner and the district court found that a posthumous illegitimate child comes within the statutory definition of a "child."[2] They also determined that this child was acknowledged by her deceased father and was dependent upon him. We affirm.

## I.

Clifton Clark, the child's father, was employed by Burton Shipyard, Inc., in Port Arthur, Texas, until March 8, 1966. On that date, while performing his duties as a welder aboard one of his employer's fishing vessels, he was injured by a falling scaffolding. He died the next day.

Clifton Clark's marital activities are complicated, but they are exceedingly important in determining the child's status under the Act. Clifton married Helen Clark in October, 1944, and lived with her until their separation in August, 1965. Shortly after the separation, Clifton began his liaison with Rose Grizzaffi. In November, 1965, Clifton and Rose traveled to Mexico, where he obtained a Mexican divorce from Helen and married Rose. The Mexican marriage was panoplied with ritualistic ceremony and nuptial formality.

From the date of their Mexican marriage until his death, Clifton and Rose lived together as man and wife. Clifton paid all of the family grocery bills and contributed in excess of $100 to their joint bank account. He also purchased a life insurance policy in which Rose was named as beneficiary.

The child, Elizabeth Marie, was conceived four months prior to Clifton's death, and it is undisputed that Clifton was the father. The Deputy Commissioner, however, determined that she was an illegitimate child. The Deputy Commissioner found that the Mexican decree purporting to divorce Clifton from Helen Clark was invalid, and therefore that the subsequent marriage to Rose was a nullity.[3] Hence his conclusion that Elizabeth Marie was a natural illegitimate child of the decedent.

The Deputy Commissioner nevertheless found that under the Act the child was entitled to benefits in the amount of $15.75 per week. Undisturbed by the fact that Elizabeth Marie was both posthumous and illegitimate, he allowed recovery because she had been acknowledged in embryo by Clifton and was dependent upon him. The Deputy Commissioner used the following reasoning to justify his award:

"On August 9, 1966 Mrs. Rose Clark gave birth to a child Elizabeth Marie. Uncontradicted testimony showed that this child was an offspring of the employee. The employee was living with and supported Rose at the time of his death. At the time of the employee's death, Rose was pregnant approximate-

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

1. 33 U.S.C.A. § 901 et seq. (1957).

2. 33 U.S.C.A. § 902 (1957).

3. The Deputy Commissioner's findings in regard to the invalidity of Clifton's marriage to Rose are as follows:
   "Mrs. Rose Grizzaffi Clark was born on December 29, 1929 and reportedly was married to the employee on November 6, 1965. A decree of divorce obtained by the employee from Mrs. Helen Clark on November 6, 1965 was null and void. Mrs. Helen Clark was

neither present nor served in the Mexican state of Nuevo Leon which purportedly granted the divorce. The procurement of the divorce decree under such circumstances was not in accord with its recital of jurisdiction and seems plainly in violation of the laws of that state. In addition, no attempt was made at the time of the hearing to authenticate the purported decree of divorce. The purported divorce by the employee from Mrs. Helen Clark was not valid. Therefore, the marriage of the employee to Mrs. Rose Grizzaffi Clark on November 6, 1965 was likewise not valid."

ly 4 months, a sufficient period of time for them to realize her condition. It is therefore determined that the employee had met the statutory requirement of acknowledgement of the unborn child. Inasmuch as the employee was living with and supported Rose at the time of his death, such support as an unborn child would require would necessarily be included in the support of the mother. To the extent that Rose was a dependent of the employee, so was the unborn child. Were the employee to be alive, it is fair to assume that the child would be supported by and dependent upon him. Elizabeth Marie is a proper beneficiary even though deemed illegitimate."

Pursuant to the procedures provided by 33 U.S.C.A. § 921, the employer and its insurance carrier, Texas Employers' Insurance Association, filed suit in the district court to set aside the award. After reviewing the action of the Deputy Commissioner, the court below concluded that "the compensation award complained of is in accordance with the law and is supported by substantial evidence."

The employer and its insurance carrier are now asking this court to overturn that judgment. They argue that a posthumous illegitimate infant is not a "child" as that term is used in the Act and that, even if the infant is a child under the statute, there is not substantial evidence to support the finding that such child had been acknowledged by the decedent and was dependent upon him.

## II.

We concern ourselves first with the question of whether the Act's benefits extend to a posthumous illegitimate child, acknowledged in embryo. The Act defines "child" as follows:

"§ 902. Definitions.

When used in this chapter—

\* \* \* \* \* \*

(14) "Child" shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom a deceased employee stood in loco parentis for at at least one year prior to the time of the injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married child unless wholly dependent on him. \* \* \* "

This definition is very broad, and it encompasses almost all acknowledged biological children of deceased workers, including both the posthumous and the illegitimate. Moreover, this definition, in accord with the policy of the Act as a whole, must be liberally construed in favor of coverage "and in a way which avoids harsh and incongruous results." O'Keeffe v. Atlantic Stevedoring Co., 5 Cir. 1965, 354 F.2d 48, 49; Reed v. Steamship Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448; Voris v. Eikel, 1953, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5. The appellants nevertheless urge us to ignore the breadth of the statute's definitional structure and to hold that an illegitimate child is covered only if it is *in esse* at the time of its father's death.

We think that this construction is contrary to both the purpose and a literal reading of the Act. Remembering that dependency, not the legality of the father's nuptials, is the keynote of coverage, we examine the language of 33 U.S. C.A. § 902(14). As the statute wends its covering and semantic way, it says " 'child' shall include a posthumous child" and then it engages in language which includes an "acknowledged illegitimate child dependent upon the deceased." Since both legitimate and illegitimate children are within the statute's benefactions and since Congress used no adjectives indicating that a posthumous child must be legitimate, we are certain that Congress did not intend to discriminate against a posthumous illegitimate. *Cf.* Voris v. Eikel, 1953, 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5, 10.

Our reading of this statute is in accord with the contemporary jurisprudence in many jurisdictions. Morgan v. Susino Const. Co., 1943, 130 N.J.L. 418, 33 A.2d 607; Patterson v. Liberty Mu-

tual Ins. Co., 1964, 110 Ga.App. 23, 137 S.E.2d 549; American Mutual Liability Ins. Co. v. Hogan, 1955, 91 Ga.App. 891, 87 S.E.2d 661; Ide v. Scott Drilling Inc., 1954, 341 Mich. 164, 67 N.W.2d 133; C. F. Wheeler Co. v. Pullins, 1942, 152 Fla. 96, 11 So.2d 303; Lippard v. Southeastern Express Co., 1935, 207 N.C. 507, 177 S.E. 801; Garner v. B. F. Goodrich Co., 1940, 136 Ohio St. 397, 16 Ohio Ops. 568, 26 N.E.2d 203; but *cf.* Williams v. American Employers Ins. Co., 1959, 237 La. 101, 110 So.2d 541. The totality of this authority is summed up in an annotation at 18 A.L.R.3rd 900, 902, as follows:

> "Although varying results have been reached with respect to the dependency status of unacknowledged posthumous illegitimate children, the courts have consistently held that a posthumous illegitimate child which was acknowledged by the putative father prior to the latter's death was entitled to dependency benefits under the workmen's compensation laws."

Of particular importance to the case *sub judice* is Kluss v. Levene's Son, Inc., 1945, 269 App.Div. 801, 55 N.Y.S.2d 108, 109. There the New York Supreme Court, Appellate Division, held that "the statutory specification of an 'acknowledged illegitimate child dependent upon the deceased,' Workmen's Compensation Law, § 2, subd. 11, includes such a child born posthumously." 55 N.Y.S.2d at 109. *Cf.* Hunter v. Goodstein Bros., 1956, 2 App.Div.2d 387, 156 N.Y.S.2d 699, 703. This New York authority has great persuasive force because the Longshoremen's and Harbor Workers' Compensation Act was modeled upon the New York employees' compensation statute, Banks v. Chicago Grain Trimmers, 1967, 390 U.S. 459, 466, 88 S.Ct. 1140, 20 L.Ed.2d 30; Lawson v. Suwannee Fruit & S. S. Co., 1948, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611; H.R.Rep. No. 1190, 69th Cong., 1st Sess., p. 2 (1926), and because both statutes use the phrase "acknowledged illegitimate child dependent upon the deceased."

Contrary to the appellants' assertions, this Court's holding in Ellis v. Henderson, 5 Cir. 1953, 204 F.2d 173, *cert. denied*, 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381, does not rule our decision in this case. The issue in *Ellis* was explained by Chief Judge Brown in Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804 as follows:

> "In Ellis v. Henderson * * * this Circuit had occasion to consider the meaning of the term 'child' as used in § 9 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 909. The facts in *Ellis* are strikingly similar to those of the instant case. The plaintiffs there were illegitimate children whose natural father co-habited with, but was not married to, their mother. The decedent was their mother's lawful husband, and the issue was whether the plaintiffs could be deemed 'children' of the decedent for purposes of the Act."

Speaking for the Court in *Ellis*, Judge Rives reasoned that the word "child," when standing without modifiers, "means not a mere biological fact but a relationship sanctioned by law." 204 F.2d at 174. In so deciding, he relied heavily upon "the distinction drawn [by the words of 33 U.S.C.A. § 902(14)] between 'child' and 'acknowledged ilegitimate child'" *Id.* He then showed that under the law of Louisiana, the state of the child's domicile, a child born during wedlock is presumed to be the legitimate child of its mother's husband (even though biologically it may not be) and that this presumption is conclusive unless the husband of the mother brings a timely action to disavow the child. Since the husband had not brought such an action, the child was regarded as legitimate under Louisiana law. Judge Rives then properly gave the Act a liberal reading and concluded that since the plaintiff was considered a legitimate child by the state, it was a "child" for the purposes of the Act.

■ Overlooking the liberal thrust of Judge Rives' opinion, the appellants focus

upon the following language taken out of context: " 'child,' without more, means a 'legitimate child.' " They argue that these words require us to hold that "posthumous child," without the modifier "illegitimate," can mean only "posthumous legitimate child" and that "illegitimate child," modified only by "acknowledged" and "dependent," cannot mean a "posthumous illegitimate child." This reasoning deserves only the adjectives "tedious" "tortuous," and "meritless." *cf.* Green v. Burch, 1948, 164 Kan. 348, 189 P.2d 892.

We hold that a posthumous illegitimate child is eligible for benefits under the Act. The award of benefits to Elizabeth Marie must, therefore, be affirmed if there is substantial evidence in the record to support the Deputy Commissioner's finding that she was both acknowledged by and dependent upon the decedent.

### III.

In determining whether there was adequate evidence in the record to support the Deputy Commissioner's findings of acknowledgment and dependency, we have a very narrow aperture of review. "The rule of judicial review has * * * emerged that the inferences drawn by the Deputy Commissioner are to be accepted unless they are irrational or 'unsupported by substantial evidence on the record * * * as a whole.' " O'Keeffe v. Smith, Hinchman and Grylls Associates, Inc., 1965, 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895. See also O'Leary v. Brown-Pacific-Maxon, Inc., 1950, 340 U.S. 504, 507–508, 71 S.Ct. 470, 95 L.Ed. 483; Mississippi Shipping Co. v. Henderson, 5 Cir. 1956, 231 F.2d 457, 460 at fn. 2.

In challenging the sufficiency of the evidence to support the Deputy Commissioner's findings, the appellants first argue that Elizabeth Marie, being *en ventre sa mere* at the time of her father's death, could not have been acknowledged by him. The record shows that Rose Grizzaffi Clark cohabited with the deceased for four months before his death and that Rose was four months pregnant at the time of his death. This is sufficient evidence to support the Deputy Commissioner's finding that Clifford knew Rose was pregnant. Since acknowledgment of paternity does not require a notary's seal or any other ritualistic proclamation, we hold that Clifford's continued cohabitation with Rose with knowledge of her pregnancy justifies the almost inescapable inference that he acknowledged Elizabeth Marie before his untimely death. In C. F. Wheeler v. Pullins, 1942, 152 Fla. 96, 11 So.2d 303, 304, we read:

"[I]t is our view that the acts of the deceased workman immediately prior to the accident may be construed as an acknowledgment of his parentage of the child for, it will be recalled, he lived with the mother continuously for many months and doubtless he knew that she was enceinte. It is contrary to human experience for a man to continue his cohabitation with a woman as her husband if he entertains doubt that he is the father of the child she is bearing."

See also Patterson v. Liberty Mutual Ins. Co., 1964, 110 Ga.App. 23, 137 S.E.2d 549; American Mutual Liability Ins. Co. v. Hogan, 1955, 91 Ga.App. 891, 87 S.E.2d 661; *cf.* Jones v. Snyder, 1926, 121 Okl. 254, 249 P. 313; but see Hooley v. Hooley, Ind.App.1967, 226 N.E.2d 344, 348–349.

The appellants further contend that a child *en ventre sa mere* cannot be dependent upon its father and that, in any event, there is no evidence in this record to support the finding that Elizabeth Marie was dependent upon the decedent. These contentions are unfounded. It taxes credulity to suppose that an unborn child, dependent upon its mother for its very being and existence, is not also dependent upon others and especially upon its father, upon whom its mother depends for support. In King v. Peninsular Portland Cement Co., 1921, 216 Mich. 335, 340, 185 N.W. 858, 860, a work-

men's compensation case, the Supreme Court of Michigan wrote:

"A child en ventre sa mere is totally dependent upon its parents for nourishment.

"In accordance with the general presumption that a posthumous child is to be regarded as born already, if it be for his benefit, such child may rank as a dependent."

See also La Blue v. Specker, 1960, 358 Mich. 558, 100 N.W.2d 445, wherein the Michigan Supreme Court held that a posthumous illegitimate child was entitled to recovery as a dependent.

■ Since for the purpose of the Act a child *en ventre sa mere* may be a dependent, the only question remaining is whether on this record the Deputy Commissioner could rationally find that Elizabeth Marie was dependent upon the decedent. Clifton's paying of the family grocery bills and his contributions to the joint bank account may be only miniscule and minute support in terms of dollars and cents, but nevertheless they constitute sufficient evidence, considering the strong presumption in favor of the Deputy Commissioner's findings, to sustain the finding that Clifton "supported Rose at the time of his death." The dependency of the mother is transmittable to the child. Thus we cannot say that the Deputy Commissioner's finding that Elizabeth Marie was dependent upon her father is irrational or not supported by substantial evidence. See Shelley v. Central Woodwork, Inc., Tenn.1960, 207 Tenn. 411, 340 S.W.2d 896; Ide v. Scott Drilling, Inc., Mich.1954, 341 Mich. 164, 67 N.W.2d 133; *cf.* Standard Dredging Corp. v. Henderson, 5 Cir. 1945, 150 F.2d 78, 80–81.

We hold that the Deputy Commissioner and the district court correctly found that Elizabeth Marie was an "acknowledged illegitimate child dependent upon the deceased," and was entitled to benefits under the Act.

Affirmed.