JAMES FRANCIS MORGAN, BY HIS NEXT FRIEND AND MOTHER, BESSIE HICKSTEIN MORGAN, PETITIONER-DEFENDANT, v. SUSINO CONSTRUCTION COMPANY, RESPONDENT-PROSECUTOR.

Submitted May 4, 1943—Decided August 17, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the petitioner-defendant, *Hodes & Hodes* (*Irving L. Hodes* and *Joseph P. Rose*).

For the respondent-prosecutor, *Edwin Joseph O'Brien* (*Thomas J. Brett*).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. A writ of *certiorari* was allowed to review an award in a compensation case. The debated question is whether the petitioner, an infant, is a total dependent of the deceased employee who admittedly met his death by accident arising out of and in the course of his employment. The infant petitioner, born a matter of two weeks after the death of the employee, Jordan, is the natural child of the decedent and one Bessie Morgan who, during the interval from conception to the birth of the child, was the wife of Arthur Morgan, from whom she had been living separate and apart for a period of six years. While the inquiry is whether this posthumous, illegitimate child is a total dependent within the contemplation of the statute, *R. S.* 34:15–1, *et seq.*, its solution in part depends on whether certain evidence questions were disposed of correctly. In the Bureau it was held that the infant was entitled to compensation as a total dependent; on appeal the Court of Common Pleas of Bergen County affirmed.

It is contended by the prosecutor that the judgment is erroneous for these reasons: first, that Arthur Morgan, the

husband, and Bessie Morgan, his wife, were not competent witnesses to testify to non-access; second, that even if their testimony was competent, it was insufficient to overcome the presumption of the infant's legitimacy; third, that it was error to hold that a posthumous, illegitimate child was contemplated as a dependent under the provisions of *R. S.* 34:15–13; and, fourth, that it was error to admit testimony concerning the declarations of the decedent, Jordan, admitting paternity of the infant.

Taking up the several points in the order stated: We consider that the testimony of the mother and the husband from whom she was living apart was properly admitted to show non-access. See *Louden* v. *Louden,* 114 *N. J. Eq.* 242. The argument of the prosecutor labors a point somewhat beside the issue. It is not a question of non-access but rather a denial of cohabitation. Opportunity for access was manifold. This couple—Morgan and his wife—had not lived together for six years. They had four children and the husband was paying the sum of $2.25 each week towards their support. For the rest they received a relief allotment from the municipality. Morgan was privileged by the order of the Domestic Relations Court of the City of Newark to visit the children and he did so. Mrs. Morgan testified: "He came to see the children * * * once or twice every other week." Mr. Morgan testified to the same fact. These visits had been constant for some years. Each denied that there had been cohabitation between them since their separation. This testimony was competent under our evidence statute, *R. S.* 2:97–1, which provides that "no person shall be excluded as a witness in any action, proceeding or matter of a civil or criminal nature for any of the following reasons: * * * (d) marital relationship." The rigid rule of the common law which prevented a husband or wife from being a witness in a litigation to which either was a party or in which either had an interest was modified by section 5 of an act concerning evidence (*Rev.* 1900, *p.* 363); and in the Revision of 1937 there is the clearest delimiting of instances where husband and wife may not testify against each other. In a criminal action or proceeding a husband or wife is competent to testify against

his or her wife or husband to prove the fact of marriage; upon the trial of an indictment a married woman shall be admitted to testify against her husband when she is the complainant against him if she shall offer herself as a witness (*R. S.* 2:97–4). The statute further confers a limited immunity on married persons as witnesses by reason of marital relationship as follows: No husband or wife in an action or proceeding for divorce on account of adultery shall be *compelled* to give evidence for the other except to prove the fact of marriage; nor shall either party be *compelled* to give evidence against the other in a criminal action or proceeding except to prove the fact of marriage; nor shall either party be *compelled* to give evidence for or against the other in any action for criminal conversation except to prove the fact of marriage, and neither party shall be *compelled* in any action, proceeding or matter to disclose any confidential communication made by one to the other during marriage (*R. S.* 2:97–9). Hence we conclude under the doctrine of the Louden case, *supra,* and our own statutory law, *supra,* there was no bar to the admission of this testimony. (Compare *State* v. *Marriner,* 93 *N. J. L.* 273.) The doctrine, characterized as the Lord Mansfield doctrine (*Goodright* v. *Moss;* 2 *Cowp.* 591), has no place in the discussion of this first point.

It is next said that the proof was insufficient to overcome the presumption of the legitimacy of the infant. The argument advanced by the prosecutor is based on cases of access of which a multitude is cited. The deputy commissioner in his findings gave cogent reasons for his fact determination on this point and stated as basis for his conclusion the manifest bitterness and hatred between the husband and wife. He took occasion further to describe the mother in no veiled terms. The deputy commissioner had complete opportunity to observe these witnesses and note their reactions as the hearing progressed; his own impressions and reactions, he stated emphatically and graphically in support of his finding and there was no dissent from his fact conclusions concerning the atmosphere between the parties at the time of the hearing or from his characterization of the mother of the infant. With this in mind, our review of the record convinces us that

the fact determination on this phase of the case was justified. The quality of the proof to the contrary overcame the presumption of legitimacy.

It is next said that a posthumous, illegitimate child is not within the comprehension of the statute, as a dependent, because not specifically mentioned as such. The provision of our statute (*R. S.* 34:15–13-g) is as follows: "The term 'dependents' shall apply to and include any or all of the following who are dependent upon the deceased at the time of accident or death: namely, husband, wife, parents, step-parents, grand-parents, children, step-children, grand-children, child *in esse,* posthumous child, illegitimate children, brothers, sisters, half brothers, half sisters, niece, nephew. * * *" It is manifest that under our statute illegitimacy is no bar to recovery; nor is a posthumous child excluded. It is said that the child was not an actual dependent. A child *en ventre sa mere* is supposed to be born for many purposes. *Jones' Blackstone* 220, *129. Those who are in the womb are considered by the civil law to exist in the nature of things as they are capable of being benefited. It is not necessary to resort to liberality of construction, as by the statute we may, to conclude that the infant petitioner is comprehended by the section, *supra,* as a dependent. At the time of decedent's death the infant was *in esse* and when born became his posthumous child. That it was illegitimate makes no difference as far as the statute is concerned (Compare *Bower v. Metal Compounds Corp.,* 121 *N. J. L.* 421; *affirmed,* 122 *Id.* 380). The infant is the "child" of the decedent. This admits of no dispute in the light of the testimony. The decedent would have had the legal and moral duty to support him when born and the child was a dependent—not actual since this is no longer a prerequisite (compare *Pamph. L.* 1911, *ch.* 95, *p.* 139)—but in the broad sense of that term.

It is further argued that because the mother lived with her own children, apart from Jordan, the infant was not part of his household and consequently not in the category of those whose dependency is conclusively presumed. This may be admitted but is beside the point. The first part of the statute defining "dependents" lists them particularly. That

clause of the statute, *supra,* which creates a conclusive presumption of dependency as to a decedent's widow and natural children under the age of sixteen, who are actually a part of the decedent's household at the time of his death. has no bearing on the question before us. It does not follow that to be a dependent one must be actually a part of the decedent's household. *Cf. Comparri* v. *James Readding, Inc.,* 120 *N. J. L.* 168.

As a corollary of this point it is argued that the reviewing court erred in finding that the infant was totally dependent upon Jordan at the time of the latter's death. We do not agree with this contention. The testimony indicates rather conclusively that Jordan was financing an action for divorce for Mrs. Morgan. Indeed the wife held a divorce decree from the courts of Mexico, alleged to have become final on October 9th, 1940. The date of the decree was prior to the child's birth. Counsel for the prosecutor conceded that there was such a decree but questioned its validity as well he might since Mrs. Morgan admitted that she had never been in Mexico. All this is indicative of the state of mind of the parties at the time. It is a fair inference from this and other testimony that decedent wished to marry the child's mother.

It is finally argued that it was error to admit testimony of certain witnesses concerning conversations had with Jordan before his death regarding his paternity of the unborn child. This testimony was received under what is known as the pedigree exception to the hearsay rule. It was said by the witness, Mrs. Batavia, a social worker, that two months prior to decedent's death, he, accompanied by Mrs. Morgan, called at the Newark Social Service Bureau. Mrs. Morgan was pregnant and Jordan told Mrs. Batavia that he came to talk to her about Mrs. Morgan's condition; that he was the father of this unborn child; that he wanted to protect its interests, and he wished to find out from her what was the best procedure. This witness further said that Jordan declared: "I will marry this woman. This is my child she is carrying and I want to marry her. There are certain things in the way that have to be cleared up." Similar statements were made by Jordan to other witnesses. It is unnecessary to

repeat them. The testimony concerning these declarations was clearly hearsay. The declarations cannot be justified as admissions against interest because Jordan is not a party to this case. If they are to be justified at all it is under the so-called pedigree exception which requires (1) that the declaration must have been made by a person not' presently available to testify; (2) that it must have been made *ante litem motam;* (3) that the declarant must have had a means of knowing the fact; (4) that the declarant be a relative by blood or marriage to the person whose pedigree is in question. The first three of these conditions seem to be satisfied. The declarant, being dead, is not available to testify. The declaration obviously was made *ante litem motam* for certainly he couldn't anticipate his untimely death and this petition for compensation; and he obviously knew the facts. The question is whether the fourth condition is satisfied. By his declaration of paternity he establishes himself as related by blood to the child, but that relationship is not established as fact unless and until the testimony offered is actually received in evidence. Professor Wigmore, however, is authority for the principle that the declarations of parents themselves in the matter of legitimacy of children are receivable in evidence. (See *Wigmore,* § 1492.) The declaration in this instance was made by Jordan as to his relationship to the child. The testimony of a person related to the decedent, Jordan, would be competent to disclose family discussions indicating that Jordan was the father of the child. And this being so in a suppositious instance, it is difficult to see why Jordan's own statements, which are much more dependable, should not be received from the lips of another. Compare *Keavey* v. *Barrett,* 62 *N. J. Eq.* 454; *Hubatka* v. *Maierhoffer,* 81 *N. J. L.* 410.

We think the testimony was properly received as an exception to the hearsay rule.

The judgment should be affirmed and the writ dismissed, with costs.