ON REHEARING
ERVIN, Chief Justice.
This is a case arising under Florida’s Workmen’s Compensation Act, Chapter 440, Florida Statutes 1967, F.S.A. The employer and carrier have petitioned, and the claimant has cross-petitioned, for a writ of certiorari to review a Compensation Order of the Florida Industrial Commission affirming the Compensation Order of the Judge of Industrial Claims. The Judge awarded death benefits to claimant, the alleged posthumous illegitimate daughter of the deceased employee. Hereinafter Petitioner will be referred to as the “employer,” cross petitioners (the minor claimant by and through her natural mother as guardian) as the “child” or “claimant,” and the deceased employee as “decedent.”
The employer argues that there was insufficient competent evidence to find that the decedent acknowledged paternity of the child where the decedent’s death occurred within 83 hours following the probable date and time of the child’s conception. The employer further asserts that error was committed in the receipt and consideration of hearsay evidence for determining whether the decedent acknowledged paternity of the child before his fatal accident.
The claimant in her cross-petition argues that there was competent substantial evidence to support finding a common law marriage between the decedent and her mother, and that such a finding, which would legitimke claimant, should have been made. As a second issue, claimant contends that the Full Commission erred by overturning a penalty awarded under Section 440.20, Florida Statutes 1967, F.S.A.
As to the first point in the cross-petition, it is sufficient to note that this Court’s review is limited to determining whether findings of the Judge of Industrial Claims are supported by competent substantial evidence and whether the orders of the Judge of Industrial Claims and Florida *362 Industrial Commission comply with the essential requirements of the law.[1] This Court has no power to make an additional independent finding of fact where the trier of fact has concluded that the evidence supports no such conclusion.[2] The record abundantly supports the conclusion of the Judge of Industrial Claims that there was no common law marriage.2a
The Judge of Industrial Claims made the following finding relative to the penalty award:
“I find from the evidence that the employer knew of the happening of the subject accident and knew of the demise of its employee, that the employer knew of the birth of the employee’s child and that no payments were made in accordance with F.S.A. 440.20(2). I find that no notice to controvert was filed after knowledge of the death or the birth of the child — no such notice being filed until 11/4/66, after the filing of the claim on 10/24/66 and not on the form (FIC 12) specified by F.S.A. 440.20(4) and Rule 6. Hence, the employer or its carrier is to pay the claimant in accordance with F.S.A. 440.20(5) an amount equal to 10% of past due unpaid installments from 5/11/64 to the date of this order.”
The Full Commission reversed the above portion of the Judge’s Order, with the following statement:
“We are of the opinion that penalties and interest should not have been assessed against the employer and carrier. In our opinion, the judge erred when he failed to excuse the employer and carrier for late payments pursuant to Section 440.-20(5), Florida Statutes, owing to conditions over which the employer and carrier had no control. Penalties should only be applied against procrastinating employers and carriers and it is apparent that such is not the case here. The carrier promptly paid all benefits which it conscientiously thought were due and it had no way of ascertaining whether the deceased employee had ever acknowledged the posthumous child. Accordingly, this portion of the judge’s Order must be reversed. The payment of interest is always due on all unpaid compensation. The judge is correct in ordering payment thereof as it is not within his discretion to excuse assessment of interest.”
Although the fatal accident occurred on August 21, 1963, no claim was filed until October 24, 1966. Notice to Controvert this claim was mailed to all interested parties on November 4, 1966, 11 days after the claim had been filed. The record fails to affirmatively show that the employer was notified of the mother’s assertion that decedent had fathered the child until claim was filed October 24, 1966, when the child and her mother contended they were entitled to share in death benefits. The employer’s Notice to Controvert was filed not within 21 days after knowledge of the decedent’s death, but within 21 days after notification of the claim. At the time the deceased employee was killed, the employer had no reason to be on notice of any claim by the child or her mother, inasmuch as the decedent was still a bachelor, legally and in the eyes of all, with the possible exception of a few close friends who were erroneously led to believe otherwise.
Under these circumstances, there was no error in the Full Commission’s reversal of that portion of the Judge’s Order requiring payment of a ten per cent penalty under Section 440.20(5), Florida Statutes 1967, F.S.A.[3] Although the Notice to *363 Controvert did not appear on the form specified by Section 440.20(4), substantial compliance with the prescribed form is sufficient.[4]
We now direct our attention to the issues raised by the employer. The following findings appear in the Compensation Order of the Judge of Industrial Claims:
“On 8/21/63, Fugate [the employee] was killed by accident arising out of and in the scope and course of his employment with Ezell Titterton, Inc., when a truck which he was operating overturned.

“On 8/17/63, or prior thereto, Fugate’s child Kim, [Claimant] had been conceived and was born on 5/11/64. (e) Prior to his death Fugate acknowledged the child and her parentage as his own. (f) The claimant is the posthumous child of the employee and within the meanings of F.S.A. 440.02(13) a dependent child of the deceased.

“The testimony offered by defense witness Menendez tended in a significant measure to bolster that of the claimant’s mother and other witnesses for the claimant. Scientifically, the testimony of Ann Fouch Angelí, M.D., is accepted as being wholly reasonable, logical and in accord with the requisites of the scientific method. Medical opinions expressed contrary to those of Dr. Angelí are rejected. She was the treating physician, speaks from a most impressive medical background both academically and as a practitioner for many years, and was candid, making no effort to advocate. Where necessary, the pedigree exception to the hearsay rule has been recognized. And, I find, factually, that all of the requisites for the application of the exception are present. It should be noted that the evidence as a whole has been considered and neither the pedigree exception, nor the evidence tangential to it is considered to be a sine qua non of the overall finding. / find that both mother and father had an understanding that a child had been conceived. They had a firm mental grasp of that fact, perceived it, and were well informed. The father had a means of perceiving the fact of conception and paternity. The acknowledgement was verbal and by act, actions and deed. The testimony of the mother and independent witness Wilcox, as well as other evidence is accepted on this issue. I find that by calendar computation and the experiencing of a painful ovulation on 8/17/63 the mother had, valid reason to believe that coitus with the father had been fruitful. This knowledge was further supported in the next few days by physical symptoms. The father had good reason to believe the same, which was a fact in being as the course of pregnancy and the delivery on the precise due date later proved. The father demonstrated his ac-knowledgement by his happiness and typically youthful concern for the mother such as not allowing her to lift or be in drafts. His acknowledgement was expressed to his closest friend, an insurance man named Wilcox, who so testified. It is contrary to human experience for a man to continue his relationship with a woman expressing his pleasure if he entertains doubt that he is the father of the child she is bearing.” (Emphasis Supplied.)
*364 The above findings were made upon evidence in the record, relevant portions of which may be summarized as follows.
The decedent, a 20-year old college student, and the child’s mother had known each other since high school and had begun dating in December of 1962. After April, 1963, the decedent and the mother considered themselves husband and wife, married “in God’s eyes.” The mother received an engagement ring on June 21, 1963, and marriage was planned for November, 1963. The child’s mother lived with her mother approximately two miles from the decedent’s apartment. There was evidence that although the two never lived together, they spent almost all non-working hours together performing such routine tasks as washing clothes, buying groceries, cooking and eating.
The mother testified that after April of 1963, she and the decedent engaged in sexual relations on an average of once or twice each week until the deceased employee’s death, and that she had had no intercourse with another man during that period. She and the deceased employee engaged in sexual relations on Wednesday, August 14, 1963, and again on Saturday evening, August 17, 1963, the latter date being the time which she fixes as the date of the child’s conception. According to the mother, approximately ten minutes after intercourse she experienced a rather sharp pain in the lower left abdominal area which she characterized as a pain of “ovulation.” She purportedly indicated her possible pregnancy to decedent later the same night, but she was unable to directly quote any statement that the decedent may have made at that time or at any time prior to his death in reaction to her possible pregnancy.
On the next day, Sunday, August 18, 1963, the decedent spent a portion of the day at the beach with his best friend. According to the friend (Wilcox), th,e decedent (Hal Fugate) discussed the possible pregnancy of his financee, stating that “he thought she [his fiancee, claimant’s mother] was pregnant” and, “He hoped she was.” The friend testified that decedent grinned and appeared to be pleased while relating the news that his fiancee was expecting a child.
The mother also testified that she experienced swelling and sore breasts on August 19, 1963, two days after relations with decedent. She stated that she told decedent she was fairly certain she was pregnant, that the decedent was excited and quite happy about the news, and that he gave her special treatment such as forbidding her to lift heavy objects or cook meals. A name for the expected child was purportedly discussed.
The mother admitted under oath that she had advised a girl friend that she was not aware of her pregnancy until after decedent’s death. The record contains no evidence that the decedent ever mentioned his fiancee’s possible pregnancy to his roommate before meeting his untimely death.
Decedent was killed at approximately 8 :- 30 a. m., August 21, 1963, a Wednesday morning. Decedent’s best friend (Wilcox) testified that during a conversation with the mother on the afternoon of the day decedent was killed, the mother told him that she was almost certain that she was pregnant and that she had missed a period and was distressed about what to do with the child.
The mother first saw a physician on September 3, 1963. After examination, the doctor concluded that there was a questionable pregnancy or that the patient was suffering from oligomenorrhea. A pregnancy test was negative at this first examination performed by the treating physician, a specialist in obstetrics and gynecology who ultimately delivered the child. The physician testified that it is normal for the breasts to become very tender and sore “in the early weeks and again in the late weeks.”
At the next examination on September 16, 1963, evident clinical signs of pregnancy *365 were confirmed by a positive pregnancy test. The child was ultimately horn on May 11, 1964, the approximate date predicted by the attending physician.
This same treating physician testified in claimant’s behalf that on the basis of all of the facts revealed to her (including knowledge on the mother’s part of her fertility period), the mother could have known that she was pregnant prior to August 21, 1963, the date of the deceased employee’s death.
The physician testifying in behalf of the employer, also specializing in obstetrics and gynecology, indicated that normal subjective symptoms of pregnancy are experienced approximately four weeks after conception or six weeks after the last menstrual period. He indicated that there may be tenderness, swelling and soreness of the breasts, even though there is no conception and no pregnancy, due to excretion of the hormones estrogen and progesterone. Although his doctor testified that women say they can “feel when they ovulate,” he stated that based on any subjective body symptoms it would be impossible for a women to conclude with any certainty that she was pregnant within four days after conception. This physician’s most definite statement on the subject was as follows: “As for her to be able, on day four of the possible pregnancy to convey to anyone, medically it is impossible. I can say that categorically. There is no test whatsoever.” Again, during cross-examination, the physician made the following statement: “And I will say here, categorically, that any individual who is pregnant within 4 days, it is impossible for that individual to say that she is pregnant * * * say it with knowledge.” “In my experience, women who come in and say they think they are pregnant have always missed one period. Even then they are not sure. Never have I had anyone come in 4 days after possible or probable conception, and say, T think I’m pregnant; I want to be examined.’ ”
The Judge recites in his Order that “the evidence as a whole has been considered and neither the pedigree exception, nor the evidence tangential to it is considered to be a sine qua non of the overall finding.” The Judge was not in error in overruling the employer’s objections to introduction of certain hearsay evidence in claimant’s behalf for whatever probative value it might have had on the issue of decedent’s acknowledgment of the child. Rules of procedure less technical than those followed by the courts are applied to hearings under our Workmen’s Compensation Act.[5] Even where strict evidentiary rules are invoked, such evidence as introduced in the instant case may be admissible under the pedigree exception to the hearsay rule for purposes of determining the child’s paternity.[6]
The final issue for our determination is whether the Judge’s finding that the decedent acknowledged paternity of the child prior to his death is based upon competent substantial evidence in the record.
It is now settled in this jurisdiction as well as in other states with similarly worded statutes to F.S. Section 440.02(13), F.S.A., that an illegitimate posthumous child whose paternity is acknowledged before the employee’s death is entitled to claim death benefits under the Workmen’s Compensation Act. C. F. Wheeler Co. v. Pullins, 152 Fla. 96, 11 So.2d 303 (1943); Annot., 18 A.L.R. 900, 907 (1968). What constitutes competent substantial evidence of acknowledgment must necessarily be determined from the circumstances of each individual case.
Acknowledgment may be in a form other than an employee’s expressed statement that he is the father of the child. In C. F. Wheeler Co. v. Pullins, supra, *366 acts of the employee immediately prior to his fatal accident were held sufficient to indicate his acknowledgment of the child’s paternity. The employee had lived with the mother continuously for many months, although he was still formally married to but separated from another woman. This Court stated that the decedent “doubtless * * * knew that she was enceinte,” and “it is contrary to human experience for a man to continue his cohabitation with a woman as her husband if he entertains doubt that he is the father of the child she is bearing.” C. F. Wheeler Co. v. Pullins, supra, 11 So.2d at 304.
In Patterson v. Liberty Mutual Ins. Co., 110 Ga.App. 23, 137 S.E.2d 549 (1964), the evidence authorized finding that the decedent and child’s mother had lived together continuously from May 1960 until the employee’s death on August 30, 1960. The child was conceived about July 1, 1960, and the mother was approximately two months pregnant at the employee’s death. Her pregnancy was confirmed medically on September 8, 1960. The mother, prior to the employee’s death, “knew in her own mind” that she was pregnant and had so informed the decedent, who was “hopeful” that she was pregnant. The mother had also informed the maternal grandmother of the probable pregnancy. The Georgia appellate court reversed and remanded to the trier of fact because evidence as to the above facts had been excluded in resolving the issue of acknowledgment. The trier had concluded as a matter of law that the deceased employee could not have acknowledged the posthumous child since he did not know as a positive fact that the mother was pregnant at the time of his death on August 30, 1960. The court concluded as follows :
“ * * * it is immaterial whether or not the putative father knew as a matter of positive fact that the mother was pregnant, it being sufficient that the putative father believed such to be the case when in fact it was; and that, acting on such belief, he acknowledged his parentage of the child. * * * The controlling factor is the actual fact of pregnancy and the putative father’s intent with respect to the unborn child; and this being true, an acknowledgment of parentage may be made by one who is acting in the belief that the mother is pregnant with his child irrespective of the fact that her pregnancy has not been medically or otherwise determined as a positive fact." (Emphasis added.)
I would adopt as applicable to the situation before us the above-quoted statement of the Georgia appellate court. The issue of acknowledgment is one to be resolved by the trier of fact. A finding in the instant case was permissible, although certainly not demanded, that the claimant had been acknowledged by the deceased employee. The evidence accepted by the Judge of Industrial Claims must surely border the limits of what we could consider competent substantial evidence. Nevertheless, the Judge has adequately explained whose testimony he has accepted and relied upon. This evidence and testimony is not of such speculative character to preclude a finding that the deceased acknowledged paternity of the child.
Our attention has been directed to the case of Gulf Power Company v. Passmore (Fla.1961), 129 So.2d 132, in which this Court on rehearing ultimately denied cer-tiorari review of the full Commission’s reversal of the Deputy Commissioner. In Passmore, the Deputy Commissioner made, inter alia, the following findings:
“I further find, however, that Miss Cotton had been pregnant with said child for such a short period of time prior to the death of Mr. Passmore (no more than two weeks), that it is highly improbable she could have known that she was pregnant prior to his death with the result that she could not have conveyed information of pregnancy to him prior to his death. * * * I find that the testimony as to the acknowledgment of paternity to be speculative and unlikely. *367 I am further of the opinion that until it can be certain and not merely a matter of suspicion that a woman carries an unborn child, the paternity of that child cannot be acknowledged.”
The full Commission found that the Deputy Commissioner “erred as a matter of law in determining the question as to acknowledgment.” The Commission considered findings and conclusions similar to those in the instant case and similar to those presented the Court in Patterson v. Liberty Mutual Ins. Co., discussed above. The findings of the Judge of Industrial Claims herein is consistent with the principles and conclusions of those cases.
The testimony of the employer’s physician unquestionably raised doubts as to the ability of the mother to recognize her pregnancy within four days after intercourse with the employee. But the Judge of Industrial Claims considered such testimony in connection with other testimony to the contrary from the physician attending the mother of claimant at the time of the latter’s birth. There was testimony from the employee’s close friend, Wilcox, that employee told him just prior to his (employee’s) accidental death, that “he thought she [claimant’s mother] was pregnant,” and indicated to his friend his exuberance over the prospect of having a child by claimant’s mother.
It is for the trier of facts to resolve such doubts and evidentiary conflicts. It is not for us, substitutionally, to make contrary findings drawing on our lay notions that knowledge by claimant’s mother of her pregnancy at the time she claimed was scientifically impossible. Nor should we conclude in the face of the record and the Judge’s finding the employee did not acknowledge to another prior to his death his belief claimant’s mother was pregnant by him.
This case emphasizes the great reliance necessarily placed upon the Judge of Industrial Claims to correctly evaluate and determine the credibility of the testimony before him.
The full Commission has accepted this fundamental principle and refused to substitute its independent judgment for that of the Judge of Industrial Claims.
Accordingly, the Compensation Order of the Full Commission is affirmed.
THORNAL, CARLTON and ADKINS, JJ., concur.
DREW, J., dissents with Opinion.
ROBERTS and BOYD, JJ., dissent and concur with DREW, J.

. Garcia v. Continental Vending Machine Corp., 176 So.2d 329 (Fla.1965) and cases cited therein.

. Id.

. At the time of decedent’s death, the Legislature had not yet abolished common law marriage. See Fla.Stat. § 741.211 (1967), F.S.A.

. “If any installment of compensation payable without an award is not paid within fourteen days after it becomes due, as provided in subsection (2) of this section, *363 there shall be added to such unpaid installment an amount equal to ten per cent thereof, which shall be paid at the same time as, but in addition to, such compensation, such installment, unless notice is filed under subsection (4) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.” Fla.Stat. § 440.20(5), F.S.A.

. Rule 14, Rules of Procedure in Workmen’s Compensation Cases before the Florida Industrial Commission.

. Fla.Stat. § 440.29 (1967), F.S.A.; Jarvis v. Miami Retreat Foundation, 128 So.2d 393 (Fla.1961).

. See, i. e., Morgan v. Susino Const. Co., 130 N.J.L. 418, 33 A.2d 607 (1943).