JUDE G. GRAVOIS, Judge.
|sIn this concursus proceeding concerning disbursement of revenues from producing oil and gas wells, appellant, Allen Kent Jones (“Mr. Jones”), a defendant-in-con-cursus, appeals a summary judgment that was granted in favor of his daughter, ap-pellee, Jennifer Jones (“Ms. Jones”), also a defendant-in-concursus, which found that Ms. Jones was entitled to the portion of funds which were deposited into the registry of the court below by the concursus plaintiffs, Quantum Resources Management, L.L.C. and Milagro Producing, L.L.C. (“Quantum and Milagro”), attributable to her naked ownership interest in and to certain immovable property located near the Lafitte community of Jefferson Parish, Louisiana. This judgment, given without reasons, also denied Mr. Jones’ cross-motion for summary judgment, wherein he sought the same portion of the deposited funds, but as usufructuary of Ms. Jones’ naked ownership interest in and to the subject property. For the reasons that follow, we reverse both the trial court’s grant of summary judgment in favor of Ms. Jones and the trial court’s denial of summary judgment in favor of Mr. Jones, and accordingly render judgment granting Mr. Jones’ motion for summary judgment, confirming that Mr. |4Jones, as usufructuary, is entitled to the mineral proceeds deposited into the registry of the court in proportion to the naked owners’ interest in and to the subject property.

FACTS AND PROCEDURAL BACKGROUND

On April 29, 2010, Quantum and Milagro filed this concursus proceeding, alleging that they were the owners of several oil, gas, and mineral leases that covered, among other properties, Lots 1-5 in the Third Jefferson Drainage District, in Sections 13 and 24, Township 16 South, Range 28 East, near Lafitte, in Jefferson Parish, Louisiana, locally known as “The Pen” (the “subject property”). Quantum and Milag-ro asserted that they were the unit operator of the CRIS 2 RA SUA Unit (the “Subject Unit”), which the aforementioned lots contributed acreage to, and upon which were situated two producing wells, known as the Mayronne No. 1 Well and the Mayronne No. 2-Alt Well.
Desiring to pay the proper parties the proceeds of production from these wells, Quantum and Milagro instituted this con-cursus proceeding, naming various parties as defendants-in-concursus that Quantum and Milagro had identified from the public records as possibly having ownership interests in and to portions of the property that formed part of the Subject Unit. As part of the concursus proceeding, Quantum and Milagro deposited production proceeds from the producing wells attributable to the disputed property involved in the Subject Unit into the registry of the court. Named as defendants in the concursus proceeding, among others, were Alan Kent Jones, Jennifer Elizabeth Jones, Patrick Kent Lindsay Jones and Jacqueline A.L. *869 Jones.[1]
|sThe salient facts in this case are these. On May 30,1989, Elizabeth Corrine Hand-lin Jones, wife of Allen Kent Jones, and mother of Jennifer, Patrick, and Jacqueline Jones (collectively, the “Jones children”), died testate in the State of Texas. At the time of her death, Louisiana law provided that all children of the deceased, regardless of age, were forced heirs. In her will, Mrs. Jones bequeathed all of her property, both community and separate, to her surviving spouse, appellant Mr. Jones. It is undisputed that the subject Lots 1-5 near Lafitte were Mrs. Jones’ separate property.
On August 27, 1999, Mr. Jones and the Jones children filed, in the 24th Judicial District Court, an action entitled “Ancillary Succession of Elizabeth Corrine Jones,” bearing Docket No. 543-542. On that same day, a Judgment of Possession was rendered in said ancillary succession proceeding, recognizing that the Jones children were Mrs. Jones’ forced heirs as to her Louisiana separate property, and reducing the universal bequest that Mrs. Jones had made to Mr. Jones, since the original bequest to Mr. Jones impinged upon the Jones children’s legitime. The Judgment of Possession further placed Mr. Jones into possession of half of Mrs. Jones’ interest in and to the subject property (the disposable portion) in full ownership, and placed the Jones children into possession of the remaining half of her interest in and to the subject property (the forced portion) as naked owners, subject to a lifetime usu-fruct in favor of Mr. Jones.[2]
|fiOn March 17, 1997, prior to the filing of Mrs. Jones’ ancillary succession proceeding, the State of Louisiana, Office of Conservation, issued Order 1414, effective on February 25, 1997, establishing the Subject Unit which included portions of the subject property. According to the record, the Mayronne No. 1 Well began production sometime in 1996, and the May-ronne No. 2-Alt Well began production sometime in 2000.
Several of the defendants-in-concursus, including Mr. Jones and Ms. Jones, asserted claims in the concursus proceeding to the funds deposited into the registry of the court. In due course, Mr. Jones filed a motion for summary judgment, arguing *870 that under the provisions of the Louisiana Mineral Code, he, as usufructuary, was entitled to the portion of the proceeds deposited into the registry of the court attributable to his children’s naked ownership interests in and to the subject property. Jennifer Jones thereupon filed a cross-motion for summary judgment, taking the contrary position that under the pertinent Mineral Code provisions, the naked owners, not the usufructuary, are entitled to the mineral proceeds in question, arguing that Mr. Jones’ usufruct was created in 1989 at Mrs. Jones’ death, at which time there were no “open mines” on the subject property, production having not begun from the subject property until at least 1997.
After entertaining briefs and conducting a hearing on the motions, the trial court rendered judgment on December 15, 2011 granting Ms. Jones’ motion for summary judgment and denying Mr. Jones’ motion for summary judgment.[3] The trial court did not assign reasons for its judgment. Upon Ms. Jones’ motion, the trial court issued a judgment on February 15, 2012, amending the decretal language of the original judgment to state:
|7IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Jennifer Elizabeth Jones’ Motion for Summary Judgment is GRANTED against Allen Kent Jones and that Jennifer Elizabeth Jones is recognized as the owner of and entitled to the funds deposited in the registry of the court in this concur-sus proceeding in proportion to her naked ownership interest in Lots 1-5 of the Third Jefferson Drainage District, Jefferson Parish, Louisiana.
On appeal, Mr. Jones argues that the trial court erred in finding that his usu-fruct over his deceased wife’s separate property (her interest in and to the subject property) was created at the time of her death in 1989, rather than in 1999 as a result of the Judgment of Possession rendered in her ancillary succession proceeding that reduced the impingement on his children’s legitime. He argues that because his usufruct was created in 1999 after the oil and gas production in question commenced, he is entitled to the usufruct of the mineral proceeds in question pursuant to Article 190(A) of the Mineral Code. Ms. Jones counters that the trial court correctly found that Mr. Jones’ usufruct was created at the time of Mrs. Jones’ death in 1989 before the oil and gas production in question commenced, and he is thus not entitled to the usufruct of the mineral proceeds in question.
Quantum and Milagro have also appealed the judgment under review, arguing that under the Louisiana Mineral Code, all “surviving spouse usufructuaries,” whether legal or conventional, are entitled to the usufruct of mineral proceeds, regardless of whether “open mines” existed at the time of the usufruct’s creation. Mr. Jones notes in his brief that his arguments are moot if this Court accepts Quantum and Milagro’s arguments, which would accord him the relief he seeks.[4]

*871
\ ANALYSIS

Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. Id.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The initial burden of proof is with the mover to show that no genuine issue of material fact exists. La. C.C.P. art. 966(C)(2). If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. Id.; Callis v. Jefferson Parish Hosp. Service, Dist. # 1, 07-580, pp. 4-5 (La.App. 5 Cir. 12/27/07), 975 So.2d 641, 643. Whether a particular fact is material can be seen only in light of the substantive law applicable to the case. Hubbard v. Jefferson Parish Parks and Recreation, 10-24, p. 6 (La.App. 5 Cir. 5/25/10), 40 So.3d 1106, 1110.
| ¡/There are no facts at issue in this appeal. The issue posed by the parties to this appeal concerns the interpretation of Articles 190 and 191 of the Louisiana Mineral Code (LSA-R.S. 31:1, et seq.).[5] By way of background, Article 4 of Mineral Code states that the Code is applicable to all forms of minerals, including oil and gas. Further, Article 188 of the Mineral Code states that except as specially provided in Articles 189 through 191 of the Code, the usufruct of land does not include the landowner’s rights in minerals. Articles 189, 190, and 191 of the Mineral Code currently provide as follows, to-wit:[6]
Article 189. Conventional usufruct may include enjoyment of mineral rights
A conventional usufruct, including one created by a donation inter vivos or mortis causa, may by express provision include the use and enjoyment of all or a specified portion of the landowner’s rights in minerals.
Article 190. Usufructuary of land entitled to enjoyment of mines or quarries worked; exception
A. If a usufruct of land is that of parents during marriage, or any other legal usufruct, or if there is no provision including the use and enjoyment of mineral rights in a *872 conventional usufruct, the usufruc-tuary is entitled to the use and enjoyment of the landowner’s rights in minerals as to mines or quarries actually worked at the time the usu-fruct was created.
B. If a usufruct of land is that of a surviving spouse, whether legal or conventional, and there is no contrary provision in the instrument creating the usufruct, the usufructu-ary is entitled to the use and enjoyment of the landowner’s rights in minerals, whether or not mines or quarries were actually worked at the time the usufruct was created. However, the rights to which the usufructuary is thus entitled shall not include the right to execute a mineral lease without the consent of the naked owner.
Article 191. When oil and gas wells and lignite operations considered open mines
| mA. As applied to oil and gas, the principle stated in Article 190 means that if at the time a usufruct is created minerals are being produced from the land or other land unitized therewith, or if there is present on the land or other land unitized therewith, a well shown by surface production test to be capable of producing in paying quantities, the usufructuary is entitled to the use and enjoyment of the landowner’s rights in minerals as to all pools penetrated by the well or wells in question.
B. As applied to lignite or another form of coal, the principle stated in Article 190 means that if at the time a usufruct is created the land has been included in a mining plan, the usufructuary is entitled to the use and enjoyment of the landowner’s rights in minerals as to all seams proposed to be developed in the mining plan provided the following requirements are satisfied:
(1) Lignite or another form of coal has been discovered as a result of acts committed on the land or due to acts providing a reasonable basis of proof of the discovery of the mineral.
(2) A mining plan for the ultimate production of lignite or other forms of coal, together with a permit issued by the responsible government official, is filed in the conveyance records of the parish or parishes in which the land is located.
(3) Actual mining operations have begun on land included in the plan, although such operations need not be conducted on the land subject to the usufruct.
We see that, by its own terms, Article 190 of the Mineral Code, as currently written, divides usufructuaries into two categories. The first category, contained in paragraph (A) of this Article, provides that the usufructuary is entitled to the use and enjoyment of the landowner’s rights in minerals as to mines or quarries actually worked at the time the usufruct was created if the usufruct of land is that of “parents during marriage, or any other legal usufruct, or if there is no provision including the use and enjoyment of mineral rights in a conventional usufruct.” The second category, contained in paragraph (B) of this Article, provides that the usu-fructuary is entitled to the use and enjoyment of the landowner’s rights in minerals, whether or not mines or quarries were actually worked at the time the | uusufruct was created, if the usufruct of land is that of “a surviving spouse, whether legal or conventional, and there is no contrary provision in the instrument creating the usu- *873 fruct.”[7] Prior to its amendment in 1986, this Article did not treat “surviving spouse” usufructuaries separately from other usufructuaries.
Louisiana Civil Code article 544 states: “Usufruct may by established by a juridical act either inter vivos or mortis causa, or by operation of law. The usufruct created by juridical act is called conventional; the usufruct created by operation of law is called legal.” It is clear in this case that Mr. Jones’ usufruct over that portion of his wife’s separate property held in naked ownership by her forced heirs is not a “legal usufruct,” since there is no usufruct that arises by operation of law in Louisiana in favor of a surviving spouse over a deceased spouse’s separate property. Accordingly, La. C.C. art. 890, which addresses the legal usufruct of a surviving spouse over a deceased spouse’s portion of community property, is not applicable to the facts of this case.[8]
Though factually the surviving spouse of his deceased wife, we find that in this case Mr. Jones is not considered a “surviving spouse” usufructuary as that term is used in Article 190(B) of the Mineral Code. He inherited full ownership of his deceased wife’s separate property as a legatee of his deceased wife, not as her surviving spouse. Further, we reject Ms. Jones’ legal position that Mr. Jones’ usu-fruct was established upon her mother’s death; Mrs. Jones’ will bequeathed all of her property to Mr. Jones in full ownership, not as a usufructuary. Mr. Jones’ usufruct is clearly conventional, rather than legal or by operation of law, since it was established by a juridical act, the Judgment of Possession that was rendered in | iaMrs. Jones’ ancillary succession proceeding. In the ancillary succession proceeding filed in 1999, Mrs. Jones’ forced heirs (her children) moved to reduce the excessive mortis causa donation Mrs. Jones made to Mr. Jones, her husband who survived her, pursuant to La. C.C. art. 1503,[9] which was their right, regardless of whether Mrs. Jones’ legatee was her surviving spouse or a third person. A reduction of an excessive donation does not occur by operation of law; it may be brought by the forced heirs as their choice. La. C.C. art. 1504; Estate of Harvey, 678 F.Supp. 1268 (E.D.La.2/11/88).[10] Accordingly, Mr. Jones’ full ownership of the property would not have been reduced to a usufruct of a portion thereof in the absence an action by the forced heirs. Therefore, his usufruct, which was a reduction of his full ownership rights as bequeathed to him by his wife, was created by the Judgment of Possession, a juridical *874 act, that was rendered in Mrs. Jones’ ancillary succession proceeding in 1999.
Now that we have determined that Mr. Jones’ usufruct of the subject property was created when the Judgment of Possession was rendered in Mrs. Jones’ ancillary succession proceeding in 1999 (rather than at the time of Mrs. Jones’ death in 1989), we now must determine whether under Article 190 of the Mineral Code he is entitled as usufructuary to the use and enjoyment of the landowner’s rights in minerals. As we have found above, the Judgment of Possession created a conventional usufruct established by juridical act, as opposed to a surviving spouse usufruct arising by operation of law. Accordingly, we find that Mr. Jones’ usufruct is governed by the provisions of Article 190(A) of the Mineral Code (as opposed to Article 190(B)). Further, the Judgment of Possession |1sdoes not contain any provision therein relative to Mr. Jones’ use and enjoyment of the mineral rights. As such, Mr. Jones would only be entitled to the oil and gas proceeds if there was an “open mine” at the time his usufruct was created. Because all parties agree the Mayronne No. 1 well began producing prior to 1999 when Mr. Jones’ usufruct was created, and thus was an “open mine” as defined by Article 191(A) of the Mineral Code, quoted supra, Mr. Jones “is entitled to the use and enjoyment of the landowner’s rights in minerals as to all pools penetrated by the well or wells in question.” Accordingly, we find that Mr. Jones, as usufructuary, is entitled to the mineral proceeds deposited into the registry of the court in proportion to the naked owners’ interest in and to the subject property.[11]

CONCLUSION

For the above reasons, we reverse both the trial court’s grant of summary judgment in favor of Ms. Jones and the -trial court denial of summary judgment in favor of Mr. Jones, and accordingly render judgment granting Mr. Jones’ motion for summary judgment, confirming that Mr. Jones, as usufructuary, is entitled to the mineral proceeds deposited into the registry of the court in proportion to the naked owners’ interest in and to the subject property.

REVERSED AND RENDERED

. An earlier appeal in this case concerned a summary judgment that was rendered in favor of other defendants-in-concursus, denying their claims to a portion of the deposited funds, which this Court affirmed. Quantum Resources Management, L.L.C. and Milagro Producing, L.L.C. v. Pirate Lake Oil Corporation, et al., 11-813 (La.App. 5 Cir. 5/31/12), 98 So.3d 394. That judgment is not germane to the substantive issues involved in the instant appeal.

. In September of 2010, Jennifer Jones and her brother, Patrick Jones, filed a separate proceeding in the 24th Judicial District Court entitled “Petition for Annulment of Judgment Obtained by Fraud and Ill Practices,” Docket No. 692-379 (they were not joined by their sister Jacqueline, who appears in other pleadings in this record aligned with Mr. Jones). Therein, they attack the Judgment of Possession rendered in the ancillary succession proceeding, contending that they had no knowledge of the ancillary succession proceeding, despite the fact that the matter was filed on their behalf, denying the validity of their signatures on those pleadings. They also argued that it was a conflict of interest for the same counsel to represent them and their father, one that they did not waive. Another part of the petition asserted that awarding them naked ownership subject to Mr. Jones' usu-fruct rather than full ownership of the forced portion impinged upon their legitime. As of the date of the issuance of this opinion, there has been no judgment in the annulment matter. Thus, the Judgment of Possession rendered in the Ancillary Succession remains valid and final at this time. We express no opinion in the annulment matter or how a nullity judgment in that suit might affect the instant matter.

. The judgment also denied Mr. Jones’ motion for summary judgment against Patrick Lindsey Jones, his son and brother of Ms. Jones. Patrick Jones is not a party to this appeal.

. Ms. Jones’ brief questions whether Quantum and Milagro, as plaintiffs-in-concursus, have standing to appeal the judgment in question, which addressed the rights of other parties. We shall not address the standing issue, except to note that under La. C.C.P. art. 2164, the Court of Appeal may render any judgment that is just, legal and proper on the record before us, which includes the ability to reverse judgments on grounds other than those asserted by an appellant. Given that Mr. Jones, who clearly has standing, has appealed the judgment, we may consider Quantum and *871 Milagro’s arguments in the nature of an ami-cus curiae brief.

. LSA-R.S. 31:1 provides: "This Title shall be known as the Louisiana Mineral Code. The provisions hereunder may be referred to and cited either as Articles of the Mineral Code or as Sections of the Revised Statutes. Thus Article 30 of the Louisiana Mineral Code may also be referred to as R.S. 31:30.” In this opinion, we will refer to the statutes in this Title of the Revised Statutes simply as Articles of “the Mineral Code” or "the Code.”

. Although included, the headings or titles to these Articles are given for the purpose of convenient reference and do not constitute part of the law. LSA-R.S. 1:13.

. The rights granted to the usufructuary under Paragraph (B) of this Article specifically do not include the right to execute a mineral lease without the consent of the naked owner.

. Louisiana Civil Code article 890 provides: “If the deceased spouse is survived by descendants, the surviving spouse shall have a usu-fruct over the decedent’s share of the community property to the extent that the decedent has not disposed of it by testament. This usufruct terminates when the surviving spouse dies or remarries, whichever occurs first.”

. Louisiana Civil Code article 1503 provides: "A donation, inter vivos or mortis causa, that impinges on the legitime of a forced heir is not null, but is merely reducible to the extent necessary to eliminate the impingement." (Emphasis in original.)

.Nor does a reduction render a testament null. La. C.C. art. 1503; Jarel v. Moon’s Succession, 190 So. 867 (La.App. 2 Cir.1939); Succession of Dancie, 191 La. 518, 186 So. 14 (1939); Succession of Barth, 178 La. 847, 152 So. 543 (1934). Also, a reduction action is prescriptable. La. C.C. art. 3497. Thus, the forced heirs may lose their right to reduce an excessive donation through inaction.

. Because all of the parties took the position on appeal that Mr. Jones’ usufruct was that of a ‘‘surviving spouse," they devoted much time in the briefs to the question of whether paragraph (A) of Article 191 of the Mineral Code (which explains what an "open mine” means regarding oil and gas operations) applies only to the usufructs described in paragraph (A) of Article 190 of the Mineral Code, or whether it also applies to "surviving spouse” usufructu-aries (described in Paragraph (B) of Article 190). Because we have determined in this opinion that Mr. Jones’ usufruct is not that of a "surviving spouse,” we expressly leave this question open for another day, as the answer to this question would be only dicta if answered in this opinion.