BONIN, J.,
concurs in part and dissents in part and assigns reasons.
hlf I were required to reach the issue of the decedent’s testamentary intent, I would concur with the Majority Opinion, as I explain in Part 2. But because I find clear error with the trial judge’s resolution that the proponent of the purported testament overcame the presumption that the lost original will was revoked by its destruction, I respectfully dissent from the Majority Opinion in that respect and explain my view in Part 1.
1
The critical inquiry in this case is whether Mrs. Dean, the proponent of probating the copy of a will, had the burden of showing by clear and convincing evidence *533 that the original -will was lost (or destroyed) by the clerk’s office after it was found following Mr. Dean’s death in order to overcome the legal presumption that it was destroyed by the testator.
Because one means of revoking a testament is by the testator physically destroying it or directing its destruction, see La. Civil Code art. 1607(1), the Louisiana Supreme Court “has adopted the uniformly adhered to rule that the failure to find a will which was duly executed and in possession of or readily accessible to, the testator, gives rise to a legal presumption of revocation by ^destruction”. Succession of Talbot, 530 So.2d 1132, 1134-1135 (La.1988). The presumption is rebuttable and may be overcome by sufficient evidence. Id. “A presumption shifts the burden of producing evidence and, under the preferable view, serves to assign the burden of persuasion as well.” Id. at 1135.
The onus of rebutting this presumption is upon Mrs. Dean, who seeks to establish the will, by clear proof that the lost will was never revoked by the testator. See Succession of Nunley, 224 La. 251, 256-257, 69 So.2d 33, 35 (1953). “Clear and convincing proof that a person other than the testator destroyed the will without the direction, consent or permission of the testator would be sufficient to overcome the presumption that the testator revoked the will by destroying it.” Succession of Doucet, 42,963, p. 7 (La.App. 2 Cir. 2/6/08), 975 So.2d 738, 741-742.
While the Talbot court made plain that the “presumption may be weak or strong, and more or less easily rebuttable depending upon the clarity of the evidence,” Talbot, 530 So.2d at 1135, we are not here dealing with a situation where the lost original will was in a house destroyed by Hurricane Katrina. See Succession of Dalier, 09-0393 (La.App. 4 Cir. 8/12/09), 19 So.3d 8. Here, Mrs. Dean contends that she, her daughters, and her lawyer all had possession of the original will after the decedent’s death but that it was lost after it had been filed with the clerk of court and presented to the first district judge in connection with the initiation of these succession proceedings. That contention, in my view, is subject to proof by clear and convincing evidence and fails on that account.
First and foremost is the testimony (not contradicted by the will’s proponent) of Tina Seghers, who was a deputy clerk -with primary responsibility for succession pleadings and wills for over thirty-five years, that not a single original last will and testament has been lost by the clerk’s office in all of that time. At the time the pleadings were returned to the clerk’s office after the signing of a judgment of | .^possession (more about that later), she noted on the original petition for possession, at the time it was submitted for safekeeping, that there was only a “copy of wills in vault (no original filed).” “[T]he risk of failure of proof is often placed upon the party who contends that the more unusual event has occurred.” Talbot, 530 So.2d at 1132. And certainly the claim that the original will was found after Mr. Dean’s death but lost by the clerk is “the more unusual event.”
Next for consideration are the initial succession pleadings filed on behalf of Mrs. Dean. The pleadings offer no documentary support that the original will was submitted to the first district judge. The petition for possession merely states that “[t]he deceased left a will leaving property to his wife” and that the decedent “left his entire estate to” Mrs. Dean. The petition makes no reference to the kind of will or the date of the will and, oddly, does not even have a prayer seeking execution or probate of the will. There is no order to execute the will or to probate the will. See *534 La. C.C.P. art. 2856. The original judgment of possession makes absolutely no reference whatsoever to a will and decrees, inaccurately, Mrs. Dean as “heir” to the estate of the decedent.[1] Not surprisingly, this judgment (as well as an amended judgment of possession[2]) was later annulled by summary judgment. Thus, we cannot ascertain from her pleadings that the will, which she minimally describes, is the original of the copy of the will which she is now seeking to probate. And, judging by the bare description of its disposition, we would have to conclude that it was, if accurate, referencing a different will, because to conclude that it was^ the original of this will we would have to allow that it was poorly and misleadingly described.
| ¿Third, and importantly, even though Mrs. Dean was seeking a declaration that the decedent’s children had no rights under the will, the children were not notified about the proceedings at the time Mrs. Dean claims to have been in possession of the original.
As the proponent of the will, Mrs. Dean offered the testimony of her daughters and her lawyer.[3] The daughters’ testimony about finding the original will after Mr. Dean’s death is forceful in its insistence but weak and inconsistent in detail. The lawyer’s testimony must surely be discounted in light of the pleadings he prepared and the procedures he followed. And we need not linger over his remarkable recollection several years after the incident that he had definitely not given this particular original will to Ms. Seghers (but could not remember to which deputy clerk he had entrusted it).
Thus, I find that Mrs. Dean failed to overcome the legal presumption of destruction by the testator by clear and convincing evidence that, the will was found after the de'ath but subsequently lost by the clerk’s office. See Doucet, supra. I would reverse the probate of the copy of the will, conclude that Mr. Dean died intestate, and remand for further proceedings.
2
As I indicated earlier, however, if I were required to reach the intent of the testator, I concur in the Majority Opinion’s resolution of that issue.
Mrs. Dean argues that the children’s inclusion in her late husband’s testament was simply a reflection of the now-revised requirements of the forced heirship law. This notion arises from a fundamental misunderstanding of the forced heirship laws then and now. The forced heirship law did not and does not compel any testator to provide by testament (i.e. bequeath) any portion of his estate | Bto a forced heir; the failure to provide by testament for a forced heir does not invalidate a testament nor make the bequests to others null. See La. Civil Code art. 1508 (“A donation inter vivos or mortis causa, that impinges upon the legitime of a forced heir is not null but *535 is merely reducible to the extent necessary to eliminate the impingement”); see also Succession of Dancie, 191 La. 518, 531, 186 So. 14, 18 (1939), and Jarel v. Moon’s Succession, 190 So. 867, 868 (La.App. 2nd Cir.1939) (“It is a well settled rule of law that any will in which a bequest exceeds the disposable portion is not void; the legacy is only subject to reduction.”)
The reduction of the excessive donation is not automatic and does not occur by operation of law. See Quantum Resources Management, LLC v. Pirate Lake Oil Corp., 12-256, p. 12 (La.App. 5 Cir. 11/13/12), 105 So.3d 867, 873. A forced heir must bring an action to reduce an excessive donation. Id.; see also, e.g., Succession of Guerre, 197 So.2d 738, 745 (La.App. 4th Cir.1967). And the action to reduce an excessive donation can be lost by liberative prescription. See Succession of Dancie, 191 La. at 532, 186 So. at 18.
Thus, Mr. Dean did not “have to” name his children in his will. Their inclusion as named legatees and as his “beloved” indicates an intent that a share of his property (or its equal value) be theirs in full ownership upon the death of his second wife. If he had any other intent, he could have simply and validly declared that he wanted all he died possessed of to go to his wife.

. If the intention was to execute an original notarial will, Mrs. Dean would be properly described as a ''legatee.” See La. Civil Code 876.

. When a financial institution refused to hon- or the original judgment of possession, Mrs. Dean submitted an amended judgment of possession in which she inaccurately represented that the decedent's will had been "properly probated” and by way of a memorandum (no petition was filed) suggested that the decedent’s children were all majors and thus, according to the averment, there were no forced heirs. Cf. La. Civil Code art. 1493.

.Mrs. Dean also called the first judge as a witness, which was questioned by the trial judge. The only fair reading of the judge’s testimony is that he had no recollection of what will, if any will, was shown to him. For her part, Mrs. Dean admitted to confusion and loss of memory.